No. 33,102

JULIA HUDSON, a Minor, by RUTH HUDSON, Her Mother and Next
Friend, *Appellee,* v. THE YELLOW CAB & BAGGAGE COMPANY, W.
K. GAYNOR, and W. C. NOLLER, Trustee, *Appellants.*

(64 P. 2d 43)

Opinion filed January 23, 1937.

*Hugh C. Larimer* and *Lawrence J. Richardson,* both of Topeka, for the
appellants.

*Edward F. Arn,* of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal in-
juries sustained in a motor vehicle casualty. The jury answered
special questions and returned a general verdict for plaintiff for
$10,965.75. Defendants have appealed and contend the trial court
erred in overruling a motion for continuance, in overruling a demur-
rer to plaintiff's evidence, in the giving of instructions, in refusing
to submit certain special questions, and in overruling the motion for
a new trial.

The facts respecting the casualty are not seriously controverted
and may be stated as follows: In Topeka, Tenth avenue, an east-
and-west street, is intersected by Topeka boulevard, a north-and-
south street. Each is a part of one or more U. S. highways passing
through the city and carries heavy vehicular traffic, and there is
a traffic light at the intersection. On March 30, 1935, plaintiff,
then a student in Washburn College, and living in the dormi-
tory there, attended a dance accompanied by her escort, Howard
F. Smith. Returning to her home, traveling west on Tenth avenue,
they reached the intersection of Topeka boulevard shortly before
midnight. Smith was driving. As he approached the intersection

an automobile driven by R. C. Marling was standing in Tenth avenue, headed west, waiting for the traffic light to turn green. As Smith was driving up to the side of Marling the traffic light turned green and Marling started to cross the intersection. Smith drove by Marling and on into the intersection. As Marling had started and driven about twenty feet he noticed a Yellow Cab coming from the north, and stopped. Smith continued on through the intersection. The Yellow Cab did not stop for the intersection, but continued straight in its course on the west side of Topeka boulevard. The Smith automobile had passed the center of the intersection and was in the west part thereof when it was struck on the right side near the rear fender by the front of the Yellow Cab. The Smith automobile was thrown around by the impact, plaintiff was thrown out, and sustained serious injuries. Answering a special question, the jury found the traffic light at the intersection was green for east-and-west traffic when Smith drove into the intersection and when the Yellow Cab collided with his automobile. There is an abundance of evidence to sustain this finding.

Dates of the filing of pleadings, of motions, and the making of orders are almost wholly lacking in the abstract. We are told the petition was filed sometime before the summer of 1935, and that the issues were fully made up before the beginning of the September term of court. The original defendants were the Yellow Cab & Baggage Company, a corporation, and W. K. Gaynor, the driver of the cab at the time of the casualty. At some time after the action was brought a proceeding was instituted for the reorganization of the Yellow Cab & Baggage Company under section 77 b of the bankruptcy act, and in that proceeding W. C. Noller was appointed trustee. Permission to maintain the action against him was granted, he was made a party defendant, and the pleadings recast under some stipulation or agreement between counsel that the trial should not be delayed for that reason. The case was set for trial in the district court two or three times within the September, 1935, term of court. Counsel on each side tell us their recollections concerning these matters. Neither of them seemed to think it was of any importance to embody in their abstracts or briefs what the records show concerning the question. Although Gaynor was made a party defendant, served with summons, and an answer filed for him, each time the case was set for trial an application was made on behalf of the defendants for a continuance because of his ab-

sence. It appears that he had by that time left the country and no one could locate him. Defendants also contended there was a passenger in the Yellow Cab at the time of the casualty who would be an important witness and whom they had been unable to locate. At the January, 1936, term of the court it appears the case was set for trial in January, but. the record before us does not show that, and the recollections of counsel appear not to be harmonious. They agree, however, that the case was assigned for trial early in February. Defendants' counsel filed another application for continuance, accompanied by his own affidavit as to the absence of the two important witnesses and efforts he had made to locate them, and also the affidavit of counsel as to what he understood those witnesses .would testify to if present, and asked to use these affidavits as the depositions of those witnesses if a continuance were not granted. Counsel for plaintiff declined to consent to the use of the affidavits as the depositions of the absent witnesses. Whereupon, the court again continued the case, but specifically for trial on March 16. At that time defendants had not located their witnesses,. and again applied for a continuance. After hearing the application the court ruled as follows:

"The way I look at these matters is this: I have had this case set a number of times, and you have urged the same reasons each time for a continuance at every time the case has been set for hearing. I granted continuance in February in order to give you time to locate these witnesses, and I set. the case again and advised you to be ready for trial. I do not think you have shown sufficient diligence, or probability of being able to locate your witnesses in the immediate future, to entitle you to a further continuance on the same reasons that you have presented before. I am therefore overruling the motion for a continuance, and we will proceed with the trial."

Upon the record before us we are unable to say the trial court abused its discretion in refusing to grant another continuance.. It is worthy of note that the principal witness defendants wanted to locate was W. T. Gaynor, the driver of the cab. He was one óf the parties defendant in this case. We are told he was personally served with summons, and he had filed an extensive answer.. The judgment in this case is against him as well as other defendants. We see no reason why he should not have paid some attention to this lawsuit on his own account.

Defendants' demurrer to the evidence was based upon the contention that plaintiff and her escort at the time of the casualty were engaged in a joint enterprise. This was predicated upon plain-

tiff's answers to questions propounded to her to the effect that she and her escort attended the dance for their mutual pleasure. There is no hint in the evidence plaintiff had anything to do with driving the automobile in which she was riding, or had any control over the driving. There was no reason to inject the question of joint enterprise in this lawsuit, and this conclusion may stand as an answer to appellants' complaint about instructions respecting joint enterprise and special questions requested on that subject. It was not error for the court to refuse to treat the doctrine of joint enterprise as being involved in the action. Appellants further predicate their demurrer to the evidence on plaintiff's contributory negligence. They correctly argue that even as a guest in an automobile she should have used due care as to her own safety. Her testimony was that as they entered and passed through the intersection she looked at the traffic lights and observed that they were green for east-and-west traffic. She further testified that she did not see the Yellow Cab until just before it collided with the car in which she was riding. Appellants argue the fact she did not see the Yellow Cab when it was farther north on the street and as it entered the intersection makes her guilty of contributory negligence as a matter of law. We do not concur in that view. One entering an intersection controlled by traffic lights, who carefully observes that the lights are for traffic in the way he is going, is not guilty of contributory negligence as a matter of law because he does not see on the other street a car driving into the intersection against a red or stop light. At best that was a jury question, and the jury in answer to special questions found plaintiff not to be guilty of negligence which contributed to the casualty.

Appellants complain that the court did not give an instruction to the effect that a city ordinance made it unlawful for a vehicle to pass another vehicle going in the same direction at an intersection except when directed by a traffic officer. This ordinance was pleaded by defendants, but it does not appear that it was introduced in evidence, or that the court was requested to give such an instruction, nor that it is applicable to the evidence, hence the failure to give the instruction was not error.

Appellants complain that the court refused to submit certain special questions. One of these related to joint enterprise, which had no place in the case. Two others related to plaintiff's negligence, and on this point special questions were submitted, and the

last one related to whether the traffic light showed red for the north-and-south traffic when the Yellow Cab entered the intersection. No witness had testified specifically as to what that light showed. A number of witnesses testified the light showed green for east-and-west traffic. There was also evidence that the light was in perfect working order. If those things were true the light would show red for the north-and-south traffic. We regard the refusal to submit the question as to the light for north-and-south traffic as being of no consequence.

Appellants argue the amount of the verdict shows passion and prejudice of the jury, for which a new trial should have been granted. Among the special questions submitted to and answered by the jury was the following:

"7. If you find that the plaintiff is entitled to recover in this action, then state for what items you allow her to recover, and the amount of such items.

A. Medical, professional and hospitalization...................... $465.75
Loss of earning power during college course.................. 500.00
Amount of temporary injuries................................ 2,000.00
Amount of permanent injuries............................... 8,000.00

$10,965.75"

Appellants criticize the allowances made by the jury for the first two of these items, but we find they are fairly sustained by the evidence. It is conceded the evidence sustains the amount allowed for temporary injuries. Appellants contend the amount allowed for permanent injuries is grossly excessive, so much so as to indicate bias and prejudice of the jury requiring the granting of a new trial. This requires that we notice plaintiff's injuries. When struck by the Yellow Cab the car in which plaintiff was riding was turned in such a way that the car door came open and she was thrown out of the car several feet onto the pavement. She was rendered unconscious, or semiconscious, for several hours. She was taken to a hospital, where X rays promptly taken showed no broken or fractured bones. She had an abrasion above the right eye which required stitches to close. It does not appear from the evidence that this left a permanent scar. Two of her teeth were knocked out. These were later replaced with false ones. There was an oblique cut across her lower lip which required four stitches to close. This has left a noticeable scar, and at one place a small bunch of hardened flesh, which may be reduced by absorption. She had an abrasion on the thigh about the size of the palm of the

hand, and numerous abrasions about the arm, with some discoloration of the lower back. A second X ray taken in a few days disclosed a fracture of the right acetabulum of the pelvis. The medical evidence was that there is more than one regular method of treating a fractured pelvis. Sometimes a cast is used, and sometimes what is known as a Bradford Frame is used. It was not thought necessary to use either of these in plaintiff's case. The physicians had her use a sacroiliac belt and crutches. This belt has steel stays and is so made as to fit tightly about the body to hold the bones, muscles and ligaments in place. She was at the hospital about three weeks, then was in bed at home for about a week, when she was able to get around with the aid of crutches. She was unable to resume a position in which she was employed afternoons and Saturdays because it required that she be on her feet a great deal, but did get other employment at a smaller salary where she could work at a desk, but found it necessary for a time to have a chair with a soft seat and a soft back. A few months later an abscess developed on her coccyx. This was removed by an operation at the hospital, where she stayed for about a week. This should give no further trouble. In her college course her "major" subject is history, her "minor" was physical culture, which she could not continue, and changed to political science. At the time of the trial, about a year after she was thrown from the car and sustained injuries, the permanent injuries consisted of the loss of two teeth, a scar on the lower lip, and she was still having pain in the sacroiliac region, and was still wearing the sacroiliac belt and corset. The housemother at the dormitory where she lived, and who had formerly been a nurse, sometimes massaged the muscles of her back or leg. The two physicians who treated her expressed their opinion that she must have had some sprain to the sacroiliac joint. One of them declined to express an opinion as to its permanent nature. He said: "Sometimes it is and sometimes it isn't; you can't tell a thing about it." The other expressed the opinion that it is permanent. Obviously the extent to which it might cause pain or disability in the future is quite speculative, yet the possibility that it will do so cannot be ignored. The jury, having allowed plaintiff $465.75, which covered all medical, professional and hospital bills, and $500 for loss of earning power during her college course, which necessarily was an allowance upon either temporary or permanent disability, and having allowed $2,000 for temporary injuries, we

are of the opinion that the allowance of $8,000 for permanent injuries, under the evidence in this case, is excessive by as much as $3,000. However, this does not indicate such passion or prejudice of the jury as requires the granting of a new trial. Under the evidence in this case there is no question of appellants' liability. Had the affidavits offered in support of defendants' motion for a continuance been read as the depositions of the absent witnesses it seems reasonable to believe a verdict would have been returned for plaintiff. Hence, the question of amount of recovery was the real question in the case. The fact the jury placed this too high under the evidence indicates an inaccurate computation rather than bias or prejudice.

If plaintiff will remit $3,000 of the judgment, and so advises the clerk of this court within ten days after the filing of this opinion, the judgment of the court will be affirmed; otherwise, it will be reversed for a new trial. It is so ordered.