[Civ. No. 1944. Fourth Appellate District.—October 19, 1936.]

WILLIE JENKINS, as Administratrix, etc., Appellant, v. NATIONAL PAINT & VARNISH COMPANY (a Corporation), Respondent.

Fred A. Steiner and Robert B. Burch for Appellant.

Ray M. Harris and Wright, Monroe, Thomas & Glenn for Respondent.

JENNINGS, J.—Plaintiff, as administratrix of her deceased husband's estate, instituted this action to recover damages for his wrongful death alleged to have been caused through the negligence of defendant's employee acting at the time within the scope of his employment. The complaint specifically alleged that plaintiff's intestate was riding as a passenger in an automobile which was being operated by defendant's employee in so negligent and careless a manner that the vehicle was precipitated from a bridge on which it was then traveling into a canyon beneath the bridge and that as a result of this accident plaintiff's intestate suffered injuries which caused his immediate death. The answer which was filed by the defendant expressly denied that plaintiff's intestate was riding in the automobile as a passenger at the time the accident occurred. The action proceeded to trial before a jury. At the close of plaintiff's case defendant moved the court for a nonsuit. The motion was granted and the court rendered a judgment dismissing the action. This judgment contains a full and specific recitation to the effect that no substantial evidence had been produced which showed that plaintiff's intestate was a passenger in the automobile involved in the accident who had paid or agreed to pay any compensation for his transportation in said vehicle. From the judgment thus rendered in defendant's favor the plaintiff has perfected this appeal.

From the above analysis of the pleadings in the action and the recital contained in the judgment to the effect that the deceased was not a passenger at the time the accident occurred, it is evident that the status of plaintiff's intestate whether as guest or passenger was a most important feature of the case. Plaintiff expressly alleged that her intestate was a passenger in the automobile at the time of the accident. Defendant specifically denied that he was a passenger. On the date of the accident section 141¾ of the California Vehicle Act defined the term "guest" as being a person who accepts a ride in any vehicle without giving compensation therefor and prohibited recovery for personal injury or death of a guest except where it was shown that such injury or death was proximately caused by the intoxication or wilful misconduct of the owner, driver or person responsible for the operation of the vehicle in which

the guest was riding. There was neither pleading nor proof by plaintiff that defendant's employee was intoxicated or that he was guilty of wilful misconduct. The action was grounded on negligence alone. Under these circumstances it is obvious that upon plaintiff rested the burden of proving that her intestate, at the time he received the injuries which resulted in his death, occupied the status of a passenger in the automobile which was being operated by defendant's employee. This must be true because plaintiff's intestate was either a guest in the car or a passenger and since plaintiff had specifically alleged that he was a passenger his status as such was a necessary element which she had to establish in order to make out a *prima facie* case entitling her to recover damages for his alleged wrongful death. This particular element is here emphasized because, although there were other facts which the plaintiff had to establish in order to make out a *prima facie* case, it is apparent that the status of plaintiff's intestate as a passenger was an essential requisite of her right of recovery and therefore, if the evidence which she produced failed to establish this necessary element, the trial court's action in granting defendant's motion for a nonsuit was correct and the judgment of dismissal must be affirmed. Proper consideration of this question requires careful examination of the evidence which had been submitted when the motion for a nonsuit was granted. ▮ In this connection, it must be borne in mind that, since we are here considering an appeal which has been taken from a judgment of dismissal following the granting of a motion for nonsuit, the familiar rule of appellate procedure which requires that every inference of fact and intendment of law shall be liberally construed in favor of sustaining plaintiff's case to the end that the cause shall be determined on its merits is applicable. (*Coakley* v. *Ajuria,* 209 Cal. 745 [290 Pac. 33]; *Hall* v. *Southern Cal. Edison Co., Ltd.,* 137 Cal. App. 449, 452 [30 Pac. (2d) 1013].)

Inspection of the record on appeal discloses that when the appellant had rested, the following evidence bearing on the question of her deceased husband's status as a passenger in the automobile at the time he came to his death was before the court: For about six years prior to November 28, 1933, respondent had maintained a store at Eleventh Street

and Broadway, in the city of San Diego, where its products were sold. For approximately sixteen months preceding the above date and on said date George H. Schrader was employed by respondent as manager of said store at a monthly wage plus a yearly bonus of 5 per cent on all sales of merchandise exceeding the sum of $18,000 per annum. As part of the duties imposed on Schrader he was required to travel about the city of San Diego for the purpose of selling paint and making collections. In so doing he used his own automobile, an Essex sedan, for which respondent furnished gasoline and oil. During the month of March, 1933, Schrader sold a quantity of paint to a firm in San Diego known as Shaw Brothers. Respondent was informed by Schrader that the transaction was a sale and that the purchaser would pay monthly instalments on the purchase price and would be entitled to have from 30 to 60 days credit on any additional purchases. The account was therefore carried on respondent's books as an open account. This paint was placed in a store at 1521 Thirtieth Street in the city of San Diego which was then being operated by Shaw Brothers. After Schrader's death, which occurred as a result of the same accident in which plaintiff's husband lost his life, Shaw Brothers claimed that the paint had not been sold to them by Schrader but had been placed in the store on consignment and respondent extinguished the indebtedness of Shaw Brothers by accepting enough of the paint that remained in the store to cover the unpaid balance. On November 28, 1933, this store was in charge of W. D. Mizelle who had been employed to operate it about two weeks prior to said date by R. C. Wright who owned a hardware store at Thirtieth Street and Adams Avenue in the city of San Diego. Wright was also a customer of respondent. During the time Mizelle operated the store at 1521 Thirtieth Street Schrader occasionally called at the store and brought paint to replace that which had been sold by Mizelle. On November 28, 1933, and for some time prior thereto appellant's husband was employed during a portion of his time by Roy E. Dodson, a plumbing contractor. From 8 o'clock A. M. to 8:15 A. M. of said date Jenkins assisted Dodson in loading a truck at Thirtieth Street and Adams Avenue and upon the completion of this task was advised by Dodson that his services would not be required

until 10 A. M. At some time before Jenkins and Dodson separated the former told the latter that "he was to go with a fellow to see about the management of a paint store". At approximately 10 A. M. of said date Schrader was in his garage at 3176 B Street in San Diego which was about five blocks distant from 1521 Thirtieth Street and was there measuring some lumber which was respondent's property and which had been stored in the garage at respondent's request until respondent should have use for it or until it could be sold. At approximately ten minutes past 10 A. M. Schrader departed from the garage in his automobile. Shortly after 10 A. M. Schrader appeared at the store at 1521 Thirtieth Street. At this time Jenkins was in the store having arrived there some six or seven minutes in advance of Schrader. The two men repaired to the rear of the store where Jenkins stated that he wanted to arrange that part of the premises for living quarters and to erect some partitions and to install a bath. Schrader remarked that he thought this could be done. At this time Jenkins found a piece of timber that was in the room and used it for the purpose of taking measurements. Shortly thereafter and prior to 10:25 A. M. Schrader and Jenkins left the store together in the former's automobile and set out in a general northerly direction toward a bridge known as the Thirtieth Street bridge. As the two men departed from the store at 1521 Thirtieth Street Schrader was driving the car and Jenkins was seated at his right, At approximately 10:25 A. M. the Essex car in which the men were riding came into collision with another automobile on the Thirtieth Street bridge and as a result of the collision the Essex automobile was precipitated from the bridge into the canyon beneath the structure and both men were instantly killed.

In contending that the above stated evidence was sufficient to show *prima facie* that Jenkins was a passenger in Schrader's automobile at the time of the fatal accident, appellant recognizes the distinction which the law makes between a passenger and a guest. As heretofore noted, section 141¾ of the California Vehicle Act, as the same existed on the date of the accident, defined a guest as one "who accepts a ride in any vehicle without giving compensation therefor". In *Parrett* v. *Carothers,* 11 Cal. App. (2d) 222, 228 [53 Pac. (2d) 1023], it is correctly stated

that a passenger is one who is rendering value received, in whatever amount, and who gives such recompense for the ride as may be regarded by way of compensation therefor, that is, a return which may make worth while the giving of the ride. In *Rocha* v. *Hulen,* 6 Cal. App. (2d) 245, 253 [44 Pac. (2d) 478], the court said: "A passenger, of course, is one who accepts a ride and returns compensation in some form, or that compensation in some form is contemplated." In *Crawford* v. *Foster,* 110 Cal. App. 81, 84 [293 Pac. 841], it is pointed out that the modifying language found in the statute, "without giving compensation therefor", may not properly be so restricted as to apply only to those who specifically pay cash or its equivalent for their transportation but that the word "compensation" is sufficiently broad to include the giving by the rider to the operator of the vehicle of any return which may make it worth the latter's while to furnish the ride. In *Piercy* v. *Zeiss,* 8 Cal. App. (2d) 595, 598 [47 Pac. (2d) 818], reference is made to the meaning of the term "compensation" as used in the California guest statute in the following language: "It seems to be well settled that under the terms of this statute a benefit accruing to the driver of a car may be such a compensation as will take a person riding with him out of the guest class and, further, that an anticipated or prospective profit is a benefit and may be as effectual for this purpose as an immediate or direct return."

Basing her argument on the accepted definition of compensation as the term is used in the guest law as exemplified in the above cited authorities and numerous other California decisions, appellant contends that the evidence produced by her on her case in chief was ample to establish *prima facie* that her intestate was a passenger in Schrader's automobile at the time the fatal accident occurred. The evidentiary basis for this contention may be stated as follows: Respondent was admittedly interested in increasing the sale of its product. To facilitate this object it authorized Schrader to travel about the city of San Diego in his automobile for which it furnished the necessary gasoline and oil. On the very morning of the accident Jenkins stated that he was to go with a fellow to see about the management of a paint store. Less than two hours after this statement was made

Jenkins appeared in a paint store in company with Schrader and there stated that he wished to arrange the rear part of the room for living quarters and to erect partitions for this purpose and at this time he made some measurements of the premises. A short time before Schrader appeared at this paint store he had spent ten minutes in his garage measuring some lumber stored therein which was respondent's property and which was for sale. When Schrader and Jenkins departed from the paint store they went away in Schrader's automobile in a northerly direction which was the general direction from the paint store of the place of business of the plumbing contractor with whom Jenkins had part-time employment and where he was scheduled to be at 10 A. M. From these facts it is declared that it is reasonable to infer that Schrader expected to install Jenkins as manager of the paint store at 1521 Thirtieth Street which would result in an advantage to respondent in that the sale of its product would thereby be promoted and a further and incidental benefit would accrue to respondent in that Jenkins evidently expected to live in the rear of the store room and wished to erect partitions for which Schrader would sell him respondent's lumber which was stored in Schrader's garage.

It is apparent that the foundation for appellant's contention in this regard is the statement of Jenkins made to his employer, Dodson, during the morning of November 28, 1933, to the effect that he was to go with some person to see about the management of a paint store and that from this simple bit of evidence a considerable number of inferences must be fairly deducible if appellant's contention of evidentiary sufficiency to justify denial of respondent's motion for a nonsuit is to be sustained.

In the first place it must be inferred that Schrader was the "fellow" whom Jenkins had arranged to accompany on an expedition to see about the management of a paint store. Second, it must be inferred that it was Jenkins who was to become the manager of the store. Third, it must be inferred that it was the store at 1521 Thirtieth Street which Jenkins had in mind when he made the statement. Fourth, it must be inferred that the assumption by Jenkins of the management of this store would be of advantage to respondent. The last-mentioned inference is obviously one that is drawn from the inference that Jenkins was in-

vestigating the possibility of becoming manager of the store. In section 1958 of the Code of Civil Procedure an inference is defined as a deduction which, without express direction of law, a jury may properly draw from proven facts. Section 1960 of the same code declares that an inference must be founded on a fact legally proved. It is clear, therefore, that an inference must have for its foundation a legally proven fact and that it is not deducible from another inference. (*Tucker* v. *City of San Francisco,* 111 Cal. App. 720, 726 [296 Pac. 101].) While it is true that there was evidence which tended to show that the paint which was contained in the store at 1521 Thirtieth Street had originally been installed by Schrader on consignment under an agreement with Shaw Brothers who apparently then controlled the store and it might fairly be inferred that it was accordingly of advantage to respondent that the store should be kept open to the end that the paint might be sold it must nevertheless be observed that there was no evidence which tended to show that there was any probability that this store would be closed. Moreover, there was no evidence which indicated that the store was then in need of a manager or that if Jenkins could have succeeded in obtaining such a position he would have sold any more of the paint than the persons who were then operating the store were selling. It is apparent, therefore, that the all-important feature of benefit which might be derived by respondent from Jenkins' success in obtaining the position of manager had no substantial evidentiary basis and was a matter which was purely conjectural and speculative.

Appellant attempts to work out a theory of advantage which would inure to respondent through the possibility of selling to Jenkins all or a part of respondent's lumber that was then stored in Schrader's garage. This theory also has its basis in the statement that he was to go with a fellow to see about the management of a paint store. From this fact and from the fact that he was later seen at the store where he made some measurements and declared that he would wish to erect partitions and install a bath so that the rear of the room could be occupied as living quarters it is argued that it is reasonable to infer therefrom that he proposed, if successful in obtaining the position of

manager, to make the above-mentioned alterations which would render it necessary for him to purchase lumber to effectuate them. From the fact that a few minutes prior to the time that Schrader appeared at the store where he met Jenkins, the former was seen in his garage measuring the lumber it is declared that the jury might properly have inferred that Schrader hoped to sell a part of the lumber to Jenkins to be used in making the proposed alterations, a matter which would have been of direct advantage to respondent since the lumber was for sale.

Here again from the simple fact that Schrader was measuring respondent's lumber it is argued that Schrader hoped to be able to sell the lumber and that he expected to be able to sell it to Jenkins who could conceivably only be interested in purchasing any lumber if he could succeed in obtaining the position of manager of this particular store which is itself an inference deduced from his statement that he was going to see about the management of a paint store. That Schrader expected to be able to sell the lumber to anyone is a pure inference. That he hoped to be able to dispose of it to a particular person is another inference which is based not on any fact but on the former inference. The possibility of advantage to be derived by respondent through the sale of its lumber is therefore purely and entirely speculative without any substantial evidentiary support. Upon this state of the evidence the trial court's action in granting respondent's motion for a nonsuit was proper. (*Curry* v. *Williams,* 109 Cal. App. 649, 654 [293 Pac. 623].)

Appellant complains that the trial court committed reversible error in rejecting certain evidence offered by her as part of her case in chief. The record shows that when the witness Dodson was on the stand appellant's counsel directed to him certain inquiries whose purpose was to obtain a recitation by the witness of certain statements made to him by Jenkins on the day preceding the accident. Objections were sustained to all such inquiries. Thereupon appellant made a formal offer of proof of the following facts: In the morning of November 27, 1933, Jenkins was cleaning up the yard at Dodson's place of business and while so engaged Jenkins stated to Dodson that he was still considering taking over the paint store of the National

Paint and Varnish Company and that he and his wife planned to live in the rear part of the store of respondent at Thirtieth and B Streets and his wife would take care of the store when he was absent and that he wished to be sure that he could continue his part-time employment for Dodson. Respondent's objection to the offer of proof was sustained.

It is apparent that the statements of the deceased which appellant sought to have admitted in evidence related to the element of the status in Schrader's automobile of the deceased at the time the accident occurred and more directly to the matter of compensation given by the deceased to Schrader in return for the ride which was furnished to him. It is also apparent that the evidence sought to be adduced was pure hearsay. In support of her contention that the evidence was admissible and that the court erred in rejecting it, appellant urges that it falls within a clearly recognized exception to the rule which forbids the reception of hearsay evidence in that it consisted of declarations of the deceased as to his intent and plan respecting the transaction wherein he met his death. It is declared that the evidence was relevant because the presence of a design or plan to do or not to do a given act has probative value to show that the act was in fact done or not done and that the declarations of a person revealing the existence of the plan or design, although pure hearsay, are admissible as statements of a mental condition.

Assuming, without deciding, that the evidence comprised in appellant's offer was admissible and that the trial court erred in rejecting it, the conclusion is impelling that the error was harmless. The rejected evidence could have shown nothing more than that Jenkins on the day prior to the accident was considering taking over the store at Thirtieth and B Streets and that if he should do so he and his wife planned to utilize the rear part of the store for living quarters. This showing, together with his statement made the following day to the effect that he was to go with someone to see about the management of a paint store, might conceivably be said to point to the fact that it was Schrader whom Jenkins was to accompany to the store at 1521 Thirtieth Street and that this particular store being one in which paint was offered for sale was the store which Jenkins

had in mind "taking over" or of which he thought he might become the manager. Not a scintilla of evidence was produced which tended to show that respondent owned the store or had any control over it or could have placed any person in charge of it. No evidence was produced which in any respect suggested that Schrader was in any fashion authorized or empowered by anyone to place Jenkins or any other person in charge of the store or to install anyone as its manager or that Schrader ever had in mind placing Jenkins or any person in the store as its manager or operator. Further, it must be borne in mind that the evidence showed that the store was open on the date of the accident and there was no evidence that whoever controlled the store was dissatisfied with the services of the persons who then had charge of it or intended to replace them. Finally, no showing whatever was made that any benefit or advantage would have inured to respondent if Jenkins were installed as manager or placed in charge of the store.

With respect to the possibility of advantage accruing to respondent through a change in the management of the store by the installation of Jenkins in the position due to the fact that he expected to live in the rear of the store and would therefore wish to make alterations which would require him to purchase lumber therefor and the possibility that he would then become a potential purchaser of respondent's lumber stored in Schrader's garage it is again obvious that entirely too much is left to conjecture and speculation in the framework of appellant's case to make it possible to declare that appellant had made out a *prima facie* case of advantage or benefit that might result to respondent. The one additional factor that might have a bearing on the sale of the lumber which is contained in the rejected evidence consists of the statement attributed to the deceased to the effect that he and his wife planned to live in the rear of the store. The addition of this fact is not sufficient to overcome the palpable weakness of appellant's proof of any compensation given by her intestate in return for the ride furnished him by Schrader. It is still open to conjecture and surmise that when Schrader was measuring the lumber in his garage at 10 o'clock of the morning of the accident he had in mind the possibility of selling any of the lumber to Jenkins or that Jenkins would have purchased any part of the lumber.

Appellant's final complaint is that the trial court erroneously rejected a certified copy of findings and award made by the industrial accident commission of the state of California in a proceeding instituted by the surviving wife and children of George H. Schrader for the purpose of securing compensation for his death from the insurance carrier of Schrader's employer. It was contended at the time the offer was made and it is here contended that the evidence was relevant and material for the reason that the commission expressly found that Schrader was manager of a branch store of respondent on November 28, 1933, and that on said date he "sustained injury arising out of and occurring in the course of his employment, which injury caused the employee's death on the same day". It is apparent that the evidence was offered for the purpose of showing that at the time of the fatal accident Schrader was acting in the course of his employment and that it related solely to this issue which was one of the elements of appellant's case which she had to establish to entitle her to recover. It is equally apparent that the rejected evidence has no bearing on the question of the status of appellant's intestate whether guest or passenger at the time of the accident. For the purpose of this decision it has been assumed that Schrader was acting in the scope of his employment at the time of the accident. The opinion herein is based solely on the ground that it was an essential requisite of appellant's case that she show that her husband was a passenger in Schrader's automobile at the time he was killed and that no substantial evidence which tended to prove this necessary element had been produced by her when she had rested her case and that therefore the trial court's action in granting respondent's motion for a nonsuit was proper. This view of the case renders unnecessary any consideration of appellant's last-mentioned contention.

The judgment from which this appeal has been perfected is affirmed.

Barnard, P. J., and Marks, J., concurred.