No. 38,129

In the Matter of the Estate of Raymond C. Wright and Ida Loraine Wright, both deceased; HERBERT C. PIZEL and MARJORIE M. PIZEL, parents and next of kin of Donald Lee Pizel, a minor, deceased, *Appellants,* v. W. C. WRIGHT, Administrator, *Appellee.*

(228 P. 2d 911)

Opinion filed March 10, 1951.

A. W. *Relihan,* of Smith Center, argued the cause, and *Terry E. Relihan* and *T. D. Relihan,* also of Smith Center, were with him on the briefs for the appellants.

H. G. *Engleman,* of Salina, argued the cause, and *LaRue Royce, E. S.*

*Hampton, H. H. Dunham, Jr.,* and *John Q. Royce,* all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This is an action for damages for wrongful death brought by Herbert C. Pizel and Marjorie M. Pizel as the parents and next of kin of their deceased minor son, Donald Lee Pizel, against the estates of Raymond C. Wright and Ida Loraine Wright, grandparents of said decedent, both of whom were killed in the accident which took the life of their grandson. The probate court allowed the claim and an appeal was taken to the district court, where defendant's demurrer to the evidence was sustained by the court, and judgment entered against appellants. This case has been before this court before (168 Kan. 493, 214 P. 2d 328) on the sole question of constitutionality of the guest statute, and the statute was held to be a proper exercise of the state's police power.

In their petition appellants alleged, in addition to the facts set forth in the opinion in this case referred to above, that they are the father and mother of Donald Lee Pizel, deceased; that W. L. Wright is the qualified and acting administrator of the estate of Raymond C. Wright and Ida Loraine Wright, both deceased, and the pertinent part of the petition, being paragraph five thereof, reads as follows:

"That on the 4th day of January, 1948, at about ten o'clock in the morning, the same being a bright, clear day with the sun shining and no wind blowing and no other obstruction to the hearing or sight of one about to cross said crossing; the said Raymond C. Wright, who then and there owned an automobile and was driving the same from said Kanorado Airport to his home, which was located about four miles north of said Airport and crossing or thereabout, having as his passengers and riding with him Ida Loraine Wright, Ronald Lee Pizel, and Donald Lee Pizel and while so driving said car at an ordinary rate of speed, it being necessary for him to drive over said railroad track and crossing to reach his home, and while so approaching said crossing there was a freight train approaching the same from the west at a high rate of speed being pulled by a diesel freight engine and hauling a large number of freight cars; that the horn or whistle of said engine was being sounded and the bell thereon was ringing and the train was making a great noise and all was plainly visible to the said Raymond C. Wright and Ida Loraine Wright; that there were no other cars or vehicles at or near said crossing at said time; that the said Raymond C. Wright had actual notice of the danger of trying to cross said crossing ahead of said train; and knew and had actual knowledge that said train was approaching said crossing; that he knew he could not cross ahead of said train or while it was passing said crossing without inflicting serious injury or death upon the

said Donald Lee Pizel; that he knew when he was at least seven or eight hundred feet from the said crossing that the train was approaching and that he could not proceed towards the same without imminent peril to the said Donald Lee Pizel and while fully conscious of all such facts above set forth, he intentionally drove his car, occupied as aforesaid, onto said track in such a manner that the car was run into and over and completely demolished, all with a reckless disregard to the consequences of his acts and as a direct and proximate result of each and all thereof the said Donald Lee Pizel was injured and from injuries he died."

The petition continues with a prayer for recovery for the wrongful death of Donald Lee Pizel, by reason of the reckless and wanton negligence of Raymond C. and Ida Loraine Wright, now deceased.

Appellee, administrator of the estate of Raymond C. and Ida Loraine Wright, filed his answer containing a general denial and a specific denial that the oncoming train was known to or visible to Raymond C. and Ida Loraine Wright, that they had actual notice of the danger in attempting to cross said crossing ahead of the train, that they knew or had actual knowledge that any train was then approaching said crossing, or that they intentionally drove their car onto the railroad track in reckless disregard of the consequences; and alleged that Donald Lee Pizel was at the time and place the guest of Raymond C. and Ida Loraine Wright and was being transported with them in the automobile driven by Raymond C. Wright who was not guilty of gross and wanton negligence in the operation of said automobile, and that the petitioners, as parents of said child, have no cause of action herein by reason of the provisions of G. S. 1949, 8-122b.

Appellants by way of reply denied all the allegations of the answer and specifically denied that the deceased Donald Lee Pizel was a guest of Raymond C. Wright by virtue of the mentioned statute.

Briefly, these are the facts herein: On January 4, 1948, the mothers and wives of the Flying Farmers living in the vicinity of Kanorado were preparing a breakfast at a church in that town; the deceased, Mrs. Ida Loraine Wright, was one of a committee to assist in preparation of the breakfast; she had assisted at the church on the previous day and was expected to help on the day of the fatal accident. On the morning in question, the deceased Raymond C. Wright had a conversation with his wife, Ida Loraine Wright, in which he told her he would just as soon she did not go to the church to work and asked her to call Marjorie Pizel, their daughter and mother of the twin boys, and see if she would work in her

place. This resulted in the telephone conversation wherein Mrs. Ida Loraine Wright called her daughter, Marjorie Pizel, and told her if she would work in her place at the church and serve that morning, to bring the twins over and she would take care of them for her. Subsequent thereto, the children were delivered by their mother to the grandparents' home and placed in the custody of Mrs. Wright. Later the same morning Mr. Wright took them in his car to the airport where they remained for a short time and then started to return to the Wright farm home. In returning to their home it was necessary for them to cross a Rock Island railroad crossing and tracks at a point a short distance east and north of the airport. Mr. Wright drove his automobile from the airport to U. S. Highway 24 which runs east and west and parallel with the Rock Island railroad tracks and drove a short distance to the highway which runs north and which is intersected by the railroad tracks about 124 feet north of Highway 24. They turned north at this point and proceeded toward the railroad crossing which is about ¼ mile east of the airport. It was a clear day and there was nothing to obstruct the view of Mr. Wright as to the railroad tracks or the train which was approaching. As Wright left the airport in his automobile, there was a freight train approaching the crossing from the west. This train was being pulled by a Diesel engine equipped with bell and air whistle on both the front and rear of the engine, which equipment was in operation and working. There are four railroad crossings in and about the depot at Kanorado and the whistle of the freight was being sounded almost continuously down the stretch of track approaching the crossing in question. The train was traveling about 45 miles an hour; the engineer saw the Wright car at about the time the train passed the airport. The Wright car was then on Highway 24 going east. The engineer saw Wright turn north and approach the crossing; the train whistle was then blowing and the bell was ringing; the Wright car did not stop, but did appear to slow down, but continued and drove onto the track in front of the oncoming train. As a result of the collision, Mr. and Mrs. Wright and Donald Lee Pizel, one of the grandsons, were killed, the other grandson being seriously injured. At the crossing in question there were the customary crossing signs. Mr. Wright's eyesight and hearing were good; he did have an artificial leg below the knee.

On a showing of these facts, appellants rested their case. Appellee interposed a demurrer to appellants' evidence which was by

the court sustained. From this ruling, appellants bring the case here and assign as error the following specifications:

1. The court erred in placing the burden of proof upon appellants as to the application, as a matter of defense, of the Kansas guest statute, G. S. 1949, 8-122b.

2. The court erred in sustaining the demurrer to the appellants' evidence.

3. The court erred in entering judgment for appellee and against appellants.

In ruling on the demurrer to appellants' evidence, the trial court properly gave first consideration to the capacity in which deceased was riding in his grandparents' car. Appellants contend that by doing so, the court placed the burden of proof upon them to show that the deceased was not a guest under the provisions of our guest statute. The record does not disclose such to be the case. After the jury was empaneled, the court held that the burden of going forth with proof was on appellants. It is an elementary rule of law that the burden of proof on any point is upon the party asserting it, and it was incumbent upon appellants to prove the allegations of their petition by a preponderance of the evidence. (*Miller v. Kruggel,* 165 Kan. 435, 195 P. 2d 597; 31 C. J. S. 709; 20 Am. Jur. 134.)

Appellants contend that Donald Lee Pizel was a passenger and not a guest in the automobile and for that reason a showing of ordinary negligence was sufficient to take the case to the jury. Appellee contends there was no showing made by appellants as to the transportation of the deceased which would relieve him from the status of a guest, and that there was no showing of gross and wanton negligence which is necessary to be shown in order to establish liability under the guest statute, G. S. 1949, 8-122b, which statute is as follows:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

We think the statute is clear that in order for one to recover for an injury or for his representative to recover for a wrongful death occasioned while being transported in the motor vehicle of another, claimant must, to avoid the limitations of our guest statute, affirmatively show that he was not a guest, that he was being transported for "payment" as that term is defined by our decisions hereinafter discussed, or that injury or death was caused by gross and

wanton negligence of the operator of the vehicle. This court has held in *Srajer v. Schwartzman,* 164 Kan. 241, 188 P. 2d 971, that under our guest statute, in order to keep a passenger from being a guest by payment of transportation, there must be a substantial consideration of some sort moving to the operator or owner of the vehicle. In *Pilcher v. Erny,* 155 Kan. 257, 124 P. 2d 461, plaintiff alleged she was a passenger for hire and set out the contract on which her conclusion was based. This court held that in order to show she was not a guest of defendant under our guest statute, it was incumbent on plaintiff to prove a substantial consideration moving to the operator or owner of the vehicle. To the same effect see *Yarnall v. Gass and Montague,* 240 Mo. App. 451; 217 S. W. 2d 283; *Voelkl v. Latin adm'r.,* 58 Ohio App. 245, 16 N. E. 2d 519; *Clendenning v. Simerman,* 220 Ia. 739, 263 N. W. 248; *Jenkins v. Nat'l Paint & Varnish Co.,* 17 Cal. App. 2d 161, 61 P. 2d 780.

In order for appellants to predicate their cause of action on mere negligence, the burden is on them to prove that decedent's status while riding in the Wright car as a passenger was not one which would exclude recovery for mere negligence as provided in our guest statute. Appellants further contend the Legislature never intended that the provisions of the guest statute should be applicable to a four-year-old child. The weight of authority is that a minor as well as an adult can be a guest even though unaccompanied by parent or guardian, even though no consent of parent or guardian is shown. (*Morgan v. Anderson,* 149 Kan. 814, 817, 89 P. 2d 866; *West v. Poor,* 196 Mass. 183, 81 N. E. 960; *Shiels v. Audette,* 119 Conn. 75, 174 Atl. 323; *Audia v. DeAngelis,* 121 Conn. 336, 185 Atl. 78; *Langford v. Rogers,* 278 Mich. 310, 270 N. W. 692) See, also, 60 C. J. S. 1017. This matter was before this court and we held (*Morgan v. Anderson,* supra):

"Where a young child, who has been left by the parent or guardian in the unrestricted care and custody of another person, is taken on an automobile trip by such person and is injured in an accident while on the trip, the child is to be considered a 'guest' within the meaning of the . . . Kansas statutes which limit the liability of automobile owners or operators in the case of injuries to passengers who are riding as 'guests without payment for transportation.' "

This brings us to the question whether there was any evidence of "payment" for deceased's transportation to make the guest statute inapplicable, and if not, whether appellants' evidence presented a prima facie case of "gross and wanton negligence." Appellants rely

on the following testimony of Bill Wright, son of Raymond C. and Ida Loraine Wright and brother of Marjorie M. Pizel, mother of deceased:

A. "Well, as I was shaving that morning I overheard dad talking to mom and he told her he would just as soon she wouldn't work down at the church that morning and that she would go with him down to the airport; that maybe she could get Marjorie to work in her place at the church; so she said, 'OK,' and she said that she would just as soon that it was that way, too; so she phoned Marjorie and told her if she would work in her place at the church and serve that morning to bring the kids over and she would take care of them for her, if she would do this work.

Q. "Then, Bill, your mother said she would take care of the children if Marjorie would go to the church?

A. "Yes, and work in mother's place.

Q. "That was all that was said that you overheard?

A. "That is all I recall hearing."

Appellee argues that the above testimony did not prove a contract or payment for transportation for appellants' deceased son within the meaning of our guest statute. It is unnecessary for us to reiterate the discussion contained in our many decisions construing the word "payment" as the same is used in our guest statute, inasmuch as it has been so recently defined in *Sparks v. Getz*, 170 Kan. 287, 225 P. 2d 106:

"Within the meaning of the guest statute (G. S. 1935 [now 1949] 8-122b) 'payment' for transportation sufficient to preclude classification of one riding in a car as a 'guest' need not be a payment in money, but it must constitute a benefit or advantage to the owner or operator which is a substantial consideration, motivating and not merely incidental in character."

See also *Srajer v. Schwartzman,* supra, *Pilcher v. Erny,* supra, *Vogrin v. Bigger,* 159 Kan. 271, 154 P. 2d 111, and cases cited, analyzed and discussed therein, including those from other jurisdictions.

The evidence in the instant case discloses that the child was delivered by appellants into the unrestricted custody and care of his grandmother Mrs. Wright, as had been done on previous occasions. Nothing was said by appellants about taking the grandchildren for any ride in an automobile. The most that can be said of the mentioned telephonic conversation is that Mrs. Wright was to keep the children and the daughter was to perform her kitchen duties at the church on the day in question. As alleged in appellant's petition and as shown by the evidence, Mrs. Wright herself was a guest in the car during the ride. There was no conversation or

evidence to show an agreement of any kind made by Mr. Wright, owner of the automobile, with his daughter Marjorie with reference to the care or transportation of the minor child. As stated by this court in *Pilcher v. Erny*, supra, the exception contained in the guest statute should apply only where the payment, consideration or benefit was the chief motivating cause for the particular transportation. The most that can be said in this case is that on the morning in question, Mr. Wright, owner and driver of the automobile, was taking his wife to the airport, and that for the pleasure, benefit and enjoyment of the children, he took them along as his guests for the purpose of seeing the landings of incoming planes of the Flying Farmers, and in no event were the children paid passengers as the term has been construed by our decisions.

Again, it is unnecessary for us to reiterate the discussion contained in our many decisions defining the terms "gross and wanton negligence" inasmuch as they have so recently been discussed and our previous decisions analyzed in *Bailey v. Resner*, 168 Kan. 439, 214 P. 2d 323, where we said:

"By many previous decisions of this court the phrase 'gross and wanton negligence' has been held to mean 'wantonness' (*Stout v. Gallemore*, 138 Kan. 385, 26 P. 2d 573; *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 664, 157 P. 2d 822, and cases cited therein; *Elliott v. Peters*, 163 Kan. 631, 635-6, 185 P. 2d 139).

"What is wantonness and how should it be defined? This court has defined it in nearly a score of cases since the enactment of the guest statute in 1931 (*Stout v. Gallemore*, supra; *Koster v. Matson*, 139 Kan. 124, 128, 30 P. 2d 107; *Sayre v. Malcom*, 139 Kan. 378, 379, 31 P. 2d 8; *Ewing v. Edwards*, 140 Kan. 325, 326-7, 36 P. 2d 1021; *Aduddell v. Brighton*, 141 Kan. 617, 618-9, 42 P. 2d 555; *Anderson v. Anderson*, 142 Kan. 463, 465-6, 50 P. 2d 995; *Cohee v. Hutson*, 143 Kan. 784, 787-9, 57 P. 2d 35; *Blosser v. Wagner*, 144 Kan. 318, 321, 59 P. 2d 37; *Donelan v. Wright*, 148 Kan. 287, 290-1, 81 P. 2d 50; *Frazier v. Cities Service Oil Co.*, supra; *Leabo v. Willett*, 162 Kan. 236, 238, 175 P. 2d 109; *Elliott v. Peters*, supra; *Kniffen v. Hercules Powder Co.*, 164 Kan. 196, 206, 188 P. 2d 980; *Srajer v. Schwartzman*, 164 Kan. 241, 248-9, 188 P. 2d 971; *Mason v. Banta*, 166 Kan. 445, 447-8, 201 P. 2d 654), and it may be said that the sum total of these definitions expounded in the past amounts to this—a wanton act is something more than ordinary negligence, and yet it is something less than willful injury; to constitute wantonness, the act must indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences of the wrongful act. It might be said to include a willful, purposeful, intentional act, but not necessarily so; it is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the consequences, although a catastrophe might be the natural result.

"The term 'wantonness' or 'wanton conduct' has been defined by this court in cases other than those involving the guest statute (G. S. 1935, 8-122b), and it is difficult to find a more adequate definition of the term than is found in one such case—*Frazier v. Cities Service Oil Co.*, supra, at page 666:

" '. . . it may be concluded that as to injuries inflicted, wanton conduct or wantonness comes between negligence on the one hand and willful or malicious misconduct on the other; that it is more than negligence and less than willfulness, and to constitute wantonness the acts complained of must show not simply lack of due care, but that the actor must be deemed to have realized the imminence of injury to others from his acts and to have refrained from taking steps to prevent the injury because indifferent to whether it occurred or not. Stated in another way, if the actor has reason to believe his act may injure another, and does it being indifferent to whether or not it injures, he is guilty of wanton conduct.' "

In the instant case the evidence disclosed that the railroad tracks and highway were nearly parallel and both the automobile and train were traveling in the same direction until just before Mr. Wright turned to cross the track. The train, prior to the turn, was almost directly behind Mr. Wright's car. Airplanes were flying overhead and were flying in such direction as to make them come low over the crossing. As Wright turned to cross the tracks, he had but 124 feet in which to observe the train and stop his automobile. There is no evidence in the record that Mr. Wright either heard the whistle or rumble of the train or that he saw the train, except the testimony of the engineer that almost simultaneously with the crash, Mr. Wright appeared to see the train. There is no evidence in the record to indicate a realization of the imminence of danger and a reckless disregard and complete indifference and unconcern for the probable consequences thereof. Both appellants testified that Mr. Wright had a love and affection for the child and had his best interests at heart. Moreover, there is a presumption that the deceased Mr. Wright, with the love of life common to all, exercised such due care as the circumstances permitted to protect himself from injury. (*Smith v. Bassett*, 159 Kan. 128, 152 P. 2d 794, and cases cited therein.)

In view of this presumption and the lack of evidence to clearly overcome it, as a matter of law, we think the lower court's action in sustaining the demurrer to appellants' evidence was proper. The judgment of the lower court is affirmed.

WERTZ, J. (dissenting): I cannot agree with all that has been said in the majority opinion, which fell to my lot to write. I do not agree that it was the intent of our legislature in enacting G. S.

1949, 8-122b, the so-called guest statute, to classify a child of tender years or a person under mental disability within the term "guest" as defined in the majority opinion. To say that a child who has been placed by its parents in the unrestricted care of another and taken by such other for a ride in a vehicle, is a guest of the driver on such occasion, takes from the term "guest" as used in the statute, its ordinary and well accepted meaning.

Our judicial history is replete with instances of legislative acts and judicial decisions to the effect that a child is conclusively presumed to be *non sui juris*, incapable of committing crime, not responsible for its torts, not guilty of contributory negligence, and incapable of making a binding contract. In the light of these and many other considerations given persons under disability, can it now be said that our legislature intended to eliminate the advantageous position that a child has heretofore enjoyed? I think not. To me the statute implies that in order to become a guest one must exercise a choice in the matter, and I think that a four-year-old lacks the legal capacity to exercise that choice, just as it is incapable of responsibility for its torts and so forth. Surely the law should not be construed to say that these helpless children are bound by the same standards applicable to persons of mature years who have the ability and mentality to contract for transportation or to object and remonstrate to the manner in which the car is driven while riding in the vehicle under circumstances which make the guest statute applicable. It appears to me to be a harsh rule of law which denies the innocent victim of tender years or the mentally disabled redress against the negligent wrongdoer. (*Fuller v. Thrun,* 109 Ind. App. 407, 31 N. E. 2d 670; *Kudrna v. Adamski,* 188 Ore. 396, 216 P. 2d 262.)

It is my opinion that application of the guest statute should not be extended beyond correction of the evils which it may be assumed were the motivating reasons for its enactment.

SMITH, J., concurs in the foregoing dissent.