**ALLEN v. KECK.**
No. 14972.

United States Court of Appeals,
Eighth Circuit.
April 28, 1954.

J. D. James, Kansas City, Mo. (John W. Schwartz and Hogsett, Depping, Houts & James, Kansas City, Mo., on the brief), for appellant.

Martin J. Purcell, Kansas City, Mo. (Henry W. Buck and Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a summary judgment entered in favor of appellee in an action brought by appellant to recover damages for the wrongful death of her husband caused by the alleged negligence of appellee, D.C., 113 F.Supp. 873. The parties will be referred to as they appeared in the trial court. In her complaint plaintiff alleged that she was the surviving widow of Claude M. Allen, deceased; that on December 30, 1951, said Claude M. Allen was riding as a passenger in an automobile then and there being driven by defendant Willard F. Keck at a point on a public highway near Overland Park in the State of Kansas when defendant negligently caused and permitted said automobile to run off the highway on the left-hand side thereof and to crash into a bridge abutment resulting in the death of deceased; that at the time of the aforesaid collision the defendant and his wife and the plaintiff and the deceased were on their way to Pleasanton, Kansas, on a hunting trip; that it was mutually agreed and understood before the trip was undertaken that expenses would be shared equally, that the task of driving would be shared equally, that the deceased would take defendant to the farm of the cousin of deceased and gain admittance to said farm for the purpose of hunting squirrels thereon; that they would share equally in any game resulting from the hunting trip; that they would each have an equal right to control the direction and route taken, and all other details of the trip such as starting and stopping. There were also allegations going to the measure of damages.

The defendant in his answer admitted that plaintiff was the widow of Claude M. Allen, deceased, denied the allegations of negligence, admitted the jurisdictional facts pleaded and admitted that Claude M. Allen was an occupant of defendant's automobile driven by defendant at the time of the accident. He then pleaded affirmatively that the accident referred to in plaintiff's complaint occurred in the State of Kansas and that the statutes and decisions of the State of Kansas governed and controlled plaintiff's alleged cause of action and the status of plaintiff's deceased husband while an occupant of defendant's automobile at that time and place.

The only witnesses having knowledge of the facts and circumstances under which the accident occurred or the trip undertaken were the plaintiff, the defendant and defendant's wife who were occupants of the automobile at the time the accident occurred. In due course the depositions of these witnesses were taken and filed following which the defendant moved for summary judgment based upon the pleadings and the facts as disclosed by the depositions of the only known witnesses. It appeared from these depositions without material dispute or conflict that Mr. and Mrs. Allen and Mr. and Mrs. Keck had been intimate friends of long standing. They had made frequent social trips together, some of these trips being extensive while others were for short distances. It was their custom to go together in one car and they alternately used the car of Mr. Allen or Mr. Keck. It was also their custom that the person whose car was not used paid the gasoline bill during the trip, each couple paying its own other traveling expenses. At the time of the tragic accident here involved Mr. and Mrs. Allen were residents and citizens of Kansas City, Missouri, while Mr. and Mrs. Keck were residents and citizens of Kansas City, Kansas.

Mr. and Mrs. Keck had relatives in Pleasanton, Kansas, and they had planned to visit them on Christmas and with that in view they had certain Christmas presents wrapped into various packages. On account of stormy weather they were prevented from going to Pleasanton at Christmas time. On the evening of December 28, 1951, Mr. and Mrs. Allen

visited at the Keck home where they engaged in a social game of pinochle and during the conversation at that time Mrs. Keck mentioned the fact that they had been prevented from making their contemplated trip to Pleasanton at Christmas time and that they had decided to go the following Sunday, December 30, 1951, to make a belated delivery of their Christmas presents. The Allens also had relatives in Pleasanton, Kansas, and when Mrs. Keck disclosed the fact that they were going to Pleasanton on the following Sunday the Allens said they too were going to visit their relatives in Pleasanton. It was then agreed that there was no reason for taking two cars and that they would go together. There was also some general discussion with reference to hunting in the vicinity of Pleasanton.

On Sunday morning, December 30, 1951, they met at a point agreed upon in Kansas City, Kansas, each family in its own car and there a discussion took place as to whose car should be taken. It seemed to be conceded that considering the question of alternating in the driving of their cars to Pleasanton it was defendant's turn to take his car. There was a friendly discussion as to which car should be taken but in view of the fact that defendant's car was loaded with Christmas presents which the Keck's were taking to their relatives in Pleasanton it was argued that it would require the transfer of those articles to the Allen car and that it would be less trouble to take the defendant's car and it was so decided. The parties had customarily made similar trips to Pleasanton several times a year and the custom was that the party whose car was not driven paid for the gasoline used on these social trips. There was, however, no discussion as to who should pay for the gasoline but it was mutually understood that Mr. Allen would, according to their custom, pay for the gasoline. For the contemplated trip no gasoline had been purchased by Mr. Allen prior to the accident in which he was killed. There was evidence that the

Keck's had definitely decided to make this trip to Pleasanton and that they would have done so whether the Allens accompanied them or not. The evidence will be further developed in the course of this opinion.

The trial court on consideration of motion of defendant for summary judgment based upon the pleadings and the complete testimony of all the witnesses as shown by their depositions on file was of the view that there was no genuine issue as to any material fact involved and being of the view that plaintiff's husband was at the time of the accident a guest of the defendant within the purview of the Kansas so-called guest statute as construed by the Supreme Court of Kansas entered summary judgment dismissing plaintiff's action on its merits.

Plaintiff contends here as she did in the trial court that whether or not her husband was a guest of defendant at the time of the accident causing his death presented a substantial question of fact to be decided by a jury. She further contends that the defendant and her husband were engaged in a joint enterprise at the time of the accident and hence the Kansas guest statute was not applicable.

█ A motion for summary judgment does not call for a trial of the issues on the merits but for an inquiry to determine whether or not there are any genuine issues as to any material facts. The nature of the proceeding is outlined by us in Hurd v. Sheffield Steel Corp., 8 Cir., 181 F.2d 269, 271, wherein it is said:

"The proceeding on motion for summary judgment is not a trial but in the nature of an inquiry in advance of trial for the purpose of determining whether there is a genuine issue of fact. Rule 56, Federal Rules of Civil Procedure, 28 U.S. C.A., contemplates prompt disposition of an action where there is in fact no genuine issue, thus avoiding the necessity of a futile trial. Either party may move for sum-

mary judgment—the plaintiff at any time after the answer has been served, and the defendant at any time after claim has been asserted against him. The burden of proof is on the moving party and the rule (56(e) ) requires that affidavits supporting or opposing a motion for summary judgment shall be made on personal knowledge and set forth such facts as would be admissible in evidence and which show that the affiant is competent to testify to the facts recited in the affidavit. If it appears from the pleadings, affidavits, admissions or depositions that there is no genuine issue as to any material fact and that the issue is one of law, then if the law so warrants a summary judgment should be entered. The question of the sufficiency of the evidence raises an issue of law, and if, under the facts, the court would be required to direct a verdict for the moving party, then a summary judgment should be granted. Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101; Parmelee v. Chicago Eye Shield Co., 8 Cir., 157 F.2d 582, 168 A.L.R. 1130; Sprague v. Vogt, 8 Cir., 150 F.2d 795; Eller v. Paul Revere Life Ins. Co., 8 Cir., 138 F.2d 403, 149 A.L.R. 1191; Gifford v. Travelers Protective Ass'n, 9 Cir., 153 F.2d 209."

In the instant case the court had before it for evaluation the sworn testimony of all the witnesses each of whom was subjected to cross-examination by counsel for the opposing party.

The accident happened in the State of Kansas and jurisdiction is based on diversity of citizenship, the requisite jurisdictional amount being involved. The substantive law of the State of Kansas is therefore applicable.

At and for a long time prior to the happening of the accident here under consideration the State of Kansas had adopted and there was in force in that state the so-called guest statute. This statute so far as here material provides as follows:

"That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death of damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle." Section 8–122b, General Statutes of Kansas (1949).

The statute has been the subject of construction by the Supreme Court of Kansas. Pilcher v. Erny, 155 Kan. 257, 124 P.2d 461; Vogrin v. Bigger, 159 Kan. 271, 154 P.2d 111; Srajer v. Schwartzman, 164 Kan. 241, 188 P.2d 971; In re Wright's Estate, 170 Kan. 600, 228 P.2d 911. In Pilcher v. Erny, supra, plaintiff brought an action for damages for injuries suffered by her while she was riding with the defendant. Defendant was regularly engaged in delivering papers. At the time plaintiff solicited transportation with him she declined to accept payment from defendant for repairing a leather coat insisting that this amount be applied on the expenses of the trip for herself and her son. It was argued by plaintiff that she was not a guest but a paying passenger. In disposing of this contention the court among other things said [155 Kan. 257, 124 P.2d 464]:

"There had been talk about plaintiff going as far as Stafford with him before he brought the coat in to be repaired. There can be no doubt that he would have gone there anyway regardless of any arrangement with plaintiff. G.S.1935, 8–122b, was enacted to make it more difficult for guests to recover damages from their hosts on account of injuries sustained in automobile wrecks. It would not do to exempt carriers for hire from liability for such damages so the provision mak-

ing an exception in cases where the guest paid for his transportation was written into the statute. The intention was, however, that the exception should apply only where the payment was the chief motivating cause for the trip or carriage, not to a case such as we have here where the trip would have been made in any event by the driver of the car, and the plaintiff was in the car, in the main, on account of a desire on the part of the defendant to be accommodating and to extend the hospitality of his car to her and her son."

In Vogrin v. Bigger, supra, the controlling question was whether or not the plaintiff was a guest of defendant within the guest statute. Plaintiff testified that he had accompanied defendant in order to aid him in the sale of a certain farm and it was contended that the effect of their arrangement was to remove him from the operation of the guest statute. The court, however, pointed out that it appeared that defendant prior to the arrangement with plaintiff had planned the trip to the farm in question for the purpose of delivering certain materials and that the chief motivating reason for the trip was not the alleged agreement between the parties and hence, the plaintiff was a guest within the provisions of the Kansas statutes. In the recent case of In re Wright's Estate, supra, the Supreme Court of Kansas reviews its prior decisions and points out what proof is necessary to warrant a recovery under the guest statute. The court there said [170 Kan. 600, 228 P.2d 915]:

"We think the statute is clear that in order for one to recover for an injury or for his representative to recover for a wrongful death occasioned while being transported in the motor vehicle of another, claimant must, to avoid the limitations of our guest statute, affirmatively show that he was not a guest, that he was being transported for 'pay-ment' as that term is defined by our decisions hereinafter discussed, or that injury or death was caused by gross and wanton negligence of the operator of the vehicle. This court has held in Srajer v. Schwartzman, 164 Kan. 241, 188 P.2d 971, that under our guest statute, in order to keep a passenger from being a guest by payment of transportation, there must be a substantial consideration of some sort moving to the operator or owner of the vehicle. In Pilcher v. Erny, 155 Kan. 257, 124 P.2d 461, plaintiff alleged she was a passenger for hire and set out the contract on which her conclusion was based. This court held that in order to show she was not a guest of defendant under our guest statute, it was incumbent on plaintiff to prove a substantial consideration moving to the operator or owner of the vehicle. To the same effect see Yarnall v. Gass, 240 Mo.App. 451, 217 S.W.2d 283; Voelkl v. Latin, 58 Ohio App. 245, 16 N.E.2d 519; Clendenning v. Simerman, 220 Iowa 739, 263 N.W. 248; Jenkins v. National Paint & Varnish Co., 17 Cal. App.2d 161, 61 P.2d 780."

In Yarnall v. Gass, 240 Mo.App. 451, 217 S.W.2d 283, 286, which is cited with approval by the Supreme Court of Kansas in In re Wright's Estate, supra, the Kansas City Court of Appeals had occasion to consider a question of liability under the Kansas guest statute. The court in announcing its conclusion as to the law of Kansas on this question among other things said:

"It was said in Srajer v. Schwartzman, 164 Kan. 241, 188 P.2d 971, 974, that in order to keep a passenger from being a guest by payment for the transportation, under the Guest Statute of Kansas, 'there must be a substantial consideration of some sort moving to the operator or owner of the vehicle'. In Pilcher v. Erny, 155 Kan. 257, 124 P.2d 461, 464, the court said:

" 'G.S.1935, 8–122b, was enacted to make it more difficult for guests to recover damages from their hosts on account of injuries sustained in automobile wrecks. It would not do to exempt carriers for hire from liability for such damages so the provision making an exception in cases where the guest paid for his transportation was written into the statute. The intention was, however, that the exception should apply only where the payment was the chief motivating cause for the trip or carriage, not to a case such as we have here where the trip would have been made in any event by the driver of the car, and the plaintiff was in the car, in the main, on account of a desire on the part of the defendant to be accommodating and to extend the hospitality of his car to her and her son'.

"In the instant case, therefore, plaintiff, in order to show that she was not a guest of the defendant under the Kansas Guest Statute, must prove that there was a substantial consideration 'moving to the operator or owner of the vehicle'; that such consideration was 'the chief motivating cause for the * * * carriage', and not a mere case 'where the trip would have been made in any event by the driver of the car, and the plaintiff was in the car, in the main, on account of a desire on the part of the defendant to be accommodating and to extend the hospitality of his car to her'. Srajer v. Schwartzman, supra; Pilcher v. Erny, supra.

" * * * This, in our opinion, falls far short of the exacting requirements of the Kansas Guest Statute as construed by the Supreme Court of that state. * * * "

In the instant case there was no substantial consideration moving from the passenger to the driver of the vehicle and none was anticipated and defendant was not a carrier for hire. The Kecks were positively going to Pleasanton for the definite purpose of belated delivery of Christmas presents. It stands without dispute that they would have gone whether the Allens went or not. The trip was not a business trip but a social one and the mere fact that customarily the party who did not furnish the car on these short social trips paid for the gas did not convert the carriage or transportation from a social function to a commercial transaction. In Voelkl v. Latin, 58 Ohio App. 245, 16 N.E.2d 519, 525, which is cited with approval by the Supreme Court of Kansas in In re Wright's Estate, supra, that court considered a situation strikingly similar in its facts to the instant case. In the course of the opinion it is said:

" 'Under the wording of our guest statute, there is no intimation that a guest contributing to the general expense does not as a matter of fact continue to be a guest. A "paying guest" is not unusual. It is a common practice among groups of friends to contribute to an automobile trip, primarily for their pleasure a just proportion of the expense, by the payment of the gasoline and oil.

" 'Can it be said that this mutual agreement destroys the reciprocal hospitality among friends, and makes the owner of the car practically a commercial hauler receiving compensation for his services? Such a holding would disrupt many trips of intimate friends.'

"We are convinced that the Guest Statute, passed for a very commendable purpose, should not be rendered practically void by holding that a contribution to common expenses of friendly parties makes those so contributing exempt from its effect."

■■ It is very generally held that the sharing of the cost of operating a car on a pleasure trip, as distinguished from a business trip and not conditioned upon such contribution, will not transform into a paying passenger one who without

the exchange would be a guest and this, we think, is the Kansas rule of law applicable to the facts and circumstances in this case.

■ It is, however, argued that plaintiff's husband and defendant were on a hunting trip at the time of the accident and that this was in effect a joint enterprise such as to exempt them from the provisions of the Kansas guest statute. The short answer to this contention would seem to be that there was no substantial evidence that the parties here involved were on a hunting trip. Plaintiff and her husband were the voluntary guests of the defendant. The primary purpose of the trip so far as the defendant and his wife were concerned was to make belated delivery of Christmas presents to their friends and relatives and to visit. This plan was definitely determined upon before any arrangement had been made to take plaintiff and her husband as guests and it would have been made whether the Allens accompanied them or not. The fact that plaintiff's husband and the defendant arranged to go hunting was a mere incident to and not the purpose of the trip. That stands without dispute. There was no definite arrangement or agreement with reference to hunting. That was purely speculative. It is generally held that a mere guest or gratuitous passenger, such as plaintiff's husband was, riding with the operator of a conveyance by invitation, is not engaged in a joint enterprise with the operator and this is true even though the guest may indicate the route to be taken or is being taken some place at his request or takes turns in driving and notwithstanding both parties may have certain plans in common and a common destination. Link v. Miller, 133 Kan. 469, 300 P. 1105; Heiserman v. Aikman, 163 Kan. 700, 186 P.2d 252; Hudson v. Yellow Cab & Baggage Co., 145 Kan. 66, 64 P.2d 43; Kansas City Public Service Co. v. Knight, 10 Cir., 116 F.2d 233; Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610; Atlanta & W. P. R. Co. v. McCord, 54 Ga App. 811, 189

S.E. 403; Teufel v. Kaufmann, 233 Iowa 443, 6 N.W.2d 850; Carboneau v. Peterson, 1 Wash.2d 347, 95 P.2d 1043; Baltimore & O. R. Co. v. Green, 4 Cir., 136 F.2d 88; McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909. There was no contractual relations between the parties here obligating either one to do or not to do any act or thing in connection with the alleged hunting venture. We think the contention that plaintiff's husband and the defendant were at the time of the accident engaged in a joint enterprise wholly without merit.

The judgment appealed from is affirmed.