VOELKL, APPELLEE, *v.* LATIN, ADMR., APPELLANT.

(Decided April 19, 1938.)

*Messrs. Kelly, Knee & Wick,* for appellee.
*Messrs. James & Coolidge,* for appellant.

GEIGER, J.   This action arose out of a very distressing automobile accident occurring northeast of Greenville, on February 16, 1935.

Plaintiff, Eleanor Voelkl, and her husband, Frank M. Voelkl, were riding with Harry Horst and Ruth Horst, husband and wife, and a Mrs. Young.  Mrs.

Horst and Mrs. Voelkl were sisters; Mrs. Horst was driving when the automobile ran off the road into a wire fence and collided with a tree. Mrs. Horst and her husband were killed, and Mr. and Mrs. Voelkl and Mrs. Young were seriously injured.

Harry G. Latin, the administrator of Ruth Horst, is the father of Ruth Horst and of the plaintiff, Eleanor Voelkl.

The plaintiff, in her amended petition, alleges that she filed with the administrator a claim, and made demand that the administrator allow the same, which he refused; that on February 16, 1935, she was a paying passenger in a Cadillac coupe; that it was at the time being driven by Ruth Horst, since deceased, the wife of Harry Horst; that when the automobile reached a curve in the road northeast of Greenville, it failed to follow the road, but ran off and into a tree, and the plaintiff was injured; that at the time and place said vehicle was being operated in a dangerous, reckless and negligent manner by Ruth Horst, in that she failed to keep a proper lookout, was driving at an excessive rate of speed, to wit, seventy miles per hour, and failed to retain such control of the vehicle as to permit its being brought to a stop within the assured clear distance ahead; that as a direct and proximate result thereof the plaintiff was injured, for which she asks judgment in the sum of $20,131. Motions were made to this petition which were overruled by the court. An answer was filed by the administrator, admitting the presentation of the claim and its disallowance, and denying all other allegations. The cause came to trial. A motion was made for a directed verdict at the conclusion of plaintiff's testimony, and at the conclusion of all the testimony, both of which were overruled. A motion for new trial was interposed, overruled, and the cause appealed to this court on questions of law.

Numerous errors were assigned by appellant, among them that the court erred in overruling certain motions; admitting evidence over objection; overruling the motion for directed verdict; refusing to allow counsel for appellant to argue the Guest Statute to the jury; refusing to submit interrogatory No. 2 in its charge to the jury; and not sustaining the motion for judgment notwithstanding the verdict. There is no allegation in the petition that the injuries were caused by the wilful or wanton misconduct of the owner, operator, or person responsible for the operation of said vehicle, and no effort was made to bring the accident within the scope of wilful or wanton misconduct.

"Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury." *Universal Concrete Pipe Co.* v. *Bassett,* 130 Ohio St., 567, 200 N. E., 843.

"* * * Such guest must plead facts that reveal on their face the element of wilfulness or wantonness * * *." *Vecchio* v. *Vecchio,* 131 Ohio St., 59, 1 N. E. (2d), 624.

The action is conceded to involve the provisions of Section 6308-6, General Code, which provides that the owner of the car shall not be liable for injuries of a guest "while being transported without payment therefor" commonly known as the "Guest Statute."

We have examined the evidence in this case very carefully, and while we are of the opinion that it does not show wilful and wanton misconduct, it does disclose that degree of negligence in the operation of the car as would require submission to the jury, if the

driver is not protected by the provisions of Section 6308-6, General Code.

The crucial question is whether the plaintiff in this case was being transported by her sister "without payment therefor," and that makes it important that we examine the testimony relating to this question.

Two of the parties to the transaction being dead, and the plaintiff being prevented from testifying under the provisions of Section 11495, General Code, the testimony as to the transaction, which is claimed to have made the plaintiff a guest paying for her transportation, falls within narrow limits.

Frank M. Voelkl, the husband of the plaintiff, testified to the relationship of the parties; that Ruth was a sister of the plaintiff and the wife of Harry Horst, and that he was the husband of the plaintiff and the brother-in-law of Ruth Horst; that the families were very intimate, and often visited back and forth; that on the evening in question they were invited to a party at Versailles, Ohio; that they had arranged to go together; that he and his wife went to the Horst home at about eight o'clock on the evening in question, and that in addition to the four, Mrs. Ruth Young was to go along; that he drove his car to the Horst home, where there was a discussion about the mode of transportation, and he suggested that as his car was out and the Horst car was in the garage that they should take his car, as everything was in good working order, and that he might as well drive, to which Mr. Horst acquiesced. Mr. Horst said: "If you take your car I will pay for the gasoline," and took from his pocket money for that purpose. While this matter was being discussed by the two men, Mrs. Horst said, "I want to drive our car," and thereupon Voelkl said, "If you are going to do that I will put my car in the garage and take yours out, and I will pay for the gasoline." Thereupon he took out money and paid

$2 to Mr. Horst. The witness stated: "Yes, and that settled the————————."

Thereupon they left the Horst home and picked up Mrs. Young.

In cross-examination this matter is somewhat elaborated, however, without much change.

Mrs. Horst said, "Let's take our car I want to drive," and thereupon Horst said, "all right," and the two men exchanged money resulting in Voelkl paying $2. Both expressed satisfaction. Horst "got two dollars out of the transaction." Voelkl, upon being asked: "Now you gave him that money to help pay for the expenses, the gasoline for the car?," answered: "He was going to pay me so I felt I would pay him." The reason given for his payment was that Horst was going to pay him if he used, his car, and he felt that it was the proper and right thing to do to share the gasoline if Horst used his car. Horst did not ask directly that the witness pay anything.

Objections being interposed further testimony in reference to the financial arrangement terminated. Under this evidence it is claimed by the plaintiff that she became a guest "transported for pay."

We have been unable to discover whether the automobile driven by Mrs. Horst belonged to her husband or both together—it was spoken of as "our car" and "his car."

It is urged by the appellant that inasmuch as the evidence discloses that the financial transactions took place between the two men, Voelkl and Horst, that there was no payment made for Mrs. Voelkl, and no money received by Mrs. Horst, who is sought to be held responsible.

It is urged that the most that can be claimed is that the money made Mr. Voelkl a paid passenger and not his wife, and that, further, the money having been paid to Mr. Horst, the arrangement did not establish

a contract under which Mrs. Horst was paid anything, it being asserted that payment of money to her husband by her brother-in-law fell short of such a contract as would constitute Mrs. Horst, the driver, one receiving payment for transporting Mrs. Voelkl. We do not decide this question, at present, but put it aside for further consideration.

The crucial question is whether the money paid was being paid for the transportation of Mrs. Voelkl, or whether it was simply a contribution to the cost of operating the car. In other words, the question is whether the money went to the operation of the motor vehicle or to the payment of the individual transportation of any of its occupants.

There was no contract as to the use to which the money was to be put except that it was for gasoline; no suggestion was made that it was for the payment of the transportation of anyone in the car. Both men made their offers, Horst first, and afterwards Voelkl, to buy gasoline for the respective cars, and neither, directly or indirectly, asserted that the gasoline or the money paid therefor was to pay for transportation of any individual.

The Guest Statute, Section 6308-6, General Code, reads as follows:

"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

One who is injured while being transported in a motor vehicle of another may avoid the limitations of the guest statute under at least three conditions:

1. That he is not a guest.
2. That he is being transported for payment.
3. That the injuries were caused by the wilful and wanton misconduct of the operator.

If any one of these conditions exists the statute will not deny a recovery.

The third condition need not engage our attention because the petition does not claim that there was any wilful or wanton misconduct, nor does it set up any facts that would justify a verdict based upon misconduct. In addition to this, the jury, in answer to special interrogatory No. 4, stated that the negligence of the driver consisted in ''too great speed on an unfamiliar highway in unfavorable weather.''

Was the plaintiff a guest? Under certain conditions those who are being transported in an automobile driven by another cannot be classified as guests, and do not fall within the provisions of the statute.

A controlling factor in determining whether such a one is a guest is whether there was a consideration for the transportation, or the relationship of master and servant existed between the passenger and the operator, or the passenger became such for the benefit of the operator, or the passenger was being conveyed for the mutual benefit of the operator and the passenger.

Where one becomes a passenger in the car of another who conveys him for the purpose of demonstrating the car, the passenger is not a guest; where one is conveyed by the operator to examine real estate, with the possibility of becoming a purchaser, he is not a guest. 5 American Jurisprudence, 634, Section 239.

Briefly, it may be said that where one becomes a passenger for the definite purpose of being of service in some way to the driver, he is not a guest.

Who is a guest? Ohio decisions furnish some definitions. In *Snyder* v. *Milligan*, 52 Ohio App., 185, 3 N. E. (2d), 633, it is stated:

"Where there is a contract * * * having specific reference to the transportation, the question of whether the person being transported is a guest will depend upon a fair and reasonable construction of said contract; * * *

"* * * where there was no business relationship between them, either of present or prospective contract, and there was no benefit, mutual or otherwise, which could be regarded as a consideration, and the only relationship was a social one of hospitality or reciprocal hospitality, the rule, by the weight of authority and reason, is that, as a matter of law, the person being transported was a guest within the meaning of what is commonly known as 'guest statutes.' "

In *Beer* v. *Beer*, 52 Ohio App., 276, 3 N. E. (2d), 702, it is stated:

"A guest, within the meaning of Section 6308-6, General Code, is one who is invited either directly or by implication to enjoy the hospitality of the driver of an automobile, who accepts such hospitality, and who takes a ride either for his own pleasure or on his own business, without making any return to or conferring any benefit upon the driver of the automobile other than the mere pleasure of his company."

In that case it is held that a sister riding with her brother is not a guest, where she is riding under an agreement whereby she and her brother are to visit their father in a hospital, she to furnish the gas and oil, and the brother the automobile.

It is not entirely clear whether this case was decided on the theory that the sister was not a guest because of the common purpose of each to visit the sick father, or that there was a contract made previous to the beginning of the journey that she would pay for the gasoline.

In *McCann* v. *Hoffman*, 9 Cal. (2d), 279, 70 P. (2d), 909, the court in referring to *Beer* v. *Beer* seems to

doubt whether it is in accord with the weight of authority on the question of who is a guest.

In construing the statute we may consider the prior state of the law and the purpose of its enactment.

It is well understood that the Legislature sought to protect one who generously transports another as a guest, without any benefit flowing to the owner of the car, from actions brought by such a person.

The Legislatures of the several states in adopting guest statutes similar to our own undoubtedly had in mind the injustice of such a situation.

The statute exempting the automobile host from liability to the guest for mere negligence should not be extended by construction beyond the correction of the evils and the attainment of the object sought, or be so restricted as to defeat or impair those purposes.

In the present case the evidence shows that intimate friends were engaged in a pleasure trip, and that the driver of the automobile definitely extended to the other members of the party an invitation to go as a guest in her car, which was accepted. The trip was purely social and for the mutual pleasure of each, each contributing their share to the pleasure of the party.

The fact that the appellee designates herself in the petition as a "paying passenger" does not take her out of her proper classification as a guest of her sister unless the facts justify it. The burden is upon her to show that she or some one for her paid her transportation.

While the word "passenger" is frequently used in reference to transportation of individuals by owners of automobiles where the designation of such person would more properly be "guest" we must look to the real facts in the case to determine her true status.

The relationship which will give rise to the status of a "passenger" rather than a "guest" must confer a benefit upon the owner of a definite tangible nature.

Was the plaintiff, as a guest of her sister, being transported for pay? It is claimed by the appellee that by virtue of the fact of the financial transaction already alluded to she became a paying passenger, or more appropriately, a paying guest, or a guest being transported for "payment therefor."

To determine whether the court erred in his instruction upon this point we refer to the general charge in which the court stated:

"One of the claims of the plaintiff is that she was a paying passenger in the Cadillac Victoria Coupe being driven by Ruth Horst, deceased, for whom the defendant herein is administrator. One of the questions for your determination is whether or not the plaintiff was a paying passenger or a guest in the automobile in which she was riding.

"It has been held in this state that a person is not a guest if he has previously arranged to pay the expenses of the trip and if he has a common object or purpose with the driver in the place they are going.

"You will consider in this case, and if you find that Eleanor Voelkl, the plaintiff herein, and her husband, had an arrangement before starting upon the trip whereby they were to pay the expenses of the trip and that they had a common object or purpose with the driver in the place where they were going and you find this by a preponderance of the evidence, you would be warranted in finding that the plaintiff was not a guest in the automobile driven by Horst.

"If you find that the plaintiff was a guest in the automobile driven by Ruth Horst, then she cannot recover in this case, and your verdict should be for the defendant and against plaintiff, and you need consider the case no further."

The charge that, if the plaintiff and her husband had an arrangement whereby they were to pay the expenses of the trip, and they had a common object or purpose

with the driver in the place they were going, the plaintiff was not a guest, is in our judgment prejudicial. The facts do not justify the charge "whereby they were to pay the expenses of the trip" as only gasoline was involved and not other expenses.

We do not perceive that the fact that they may have had a common object or purpose as to where they were going has anything to do with the liability of the defendant or lack thereof. They were not engaged in a joint enterprise so far as the operation of the automobile was concerned.

See *Bloom* v. *Leech, Admr.,* 120 Ohio St., 239, 166 N. E., 137; 2 Restatement of the Law of Torts, 1274, Section 491c.

It is probable, however, that the injection of the question of joint enterprise into the charge had no effect upon the verdict of the jury. The vice of the charge is in reference to the payment of the gasoline.

The court clearly implied that if the husband and wife by arrangement, before starting, paid for the gasoline, the plaintiff was not a guest and the recovery might be had for that reason, on account of ordinary negligence.

Is this the law of Ohio? The cases in Ohio are not in harmony. It might be inferred that in the case of *Beer* v. *Beer, supra,* it is held that under an agreement whereby the passenger is to furnish gas and oil, she, for that reason, is not a guest. Of course if she was not a guest then she could recover in spite of the statute. But, as stated before, it is not clear whether this case decides that she was not a guest because she pays or whether the purpose of the trip and the mutual benefit flowing to herself and her brother in the visit to the sick father excluded her from the definition of a guest.

In *Ernest* v. *Bellville,* 53 Ohio App., 110, 4 N. E. (2d), 286, it is held that "a passenger in an automobile

on a fishing trip with the defendant driver and another was a guest   *   *   *   although the passenger voluntarily paid part of the expense of the gasoline on the trip as well as upon some previous trips, where the payment was gratuitous and no prior agreement or arrangement in this respect had been made, and where the passenger did not intend to pay this as fare or to hire the driver.''

*Snyder* v. *Milligan, supra,* does not involve the question of a payment of gasoline.

Other states having similar statutes have held that the payment of gasoline does not constitute a payment of transportation.

See *McCann* v. *Hoffman, supra,* where it is held that the sharing of the cost of gas and oil consumed on a trip taken for pleasure or social purposes does not transfer into a ''passenger'' one who without such exchange would be a ''guest'' so as to entitle such person to recover in damages for injuries sustained as the result of driver's negligence under the guest statute.

It is stated in the body of the opinion:

''The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtained under any construction of the statute its purposes would be defeated and its effect annulled. The relationships which will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited.''

This case was decided July 24, 1937, the latest case we have found reviewing this matter. An abundance of authorities is cited to sustain this proposition.

In *Rogers* v. *Vreeland,* 16 Cal. App. (2d), 364, 60 P. (2d), 585, it was held that the sharing of expenses of a trip by automobile, including expenses of gasoline and oil, was not compensation which would take the occupants out of the statutory definition of guests, and hence they could not recover from the motorist for injuries received in an automobile accident caused by the mere negligence of the motorist.

See: *Chaplowe* v. *Powsner,* 119 Conn., 188, 175 A., 470, 95 A. L. R., 1177; *Eubanks* v. *Kielsmeier,* 171 Wash., 484; *Clendenning* v. *Simerman,* 220 Iowa, 739, 263 N. W., 248; *Askowith* v. *Massell,* 260 Mass., 202, 156 N. E., 875; 82 A. L. R., 1365; 95 A. L. R., 1180.

The writer of this opinion has had occasion in the case of *Bertelstein* v. *Marks,* 25 Ohio Law Abs., 117, to express the following:

"Under the wording of our guest statute, there is no intimation that a guest contributing to the general expense does not as a matter of fact continue to be a guest. A 'paying guest' is not unusual. It is a common practice among groups of friends to contribute to an automobile trip, primarily for their pleasure a just proportion of the expense, by the payment of the gasoline and oil.

"Can it be said that this mutual agreement destroys the reciprocal hospitality among friends, and makes the owner of the car practically a commercial hauler receiving compensation for his services? Such a holding would disrupt many trips of intimate friends."

We are convinced that the Guest Statute, passed for a very commendable purpose, should not be rendered practically void by holding that a contribution to common expenses of friendly parties makes those so contributing exempt from its effect.

There is a well-defined distinction which will take from the operation of the statute those who are not in fact guests or those guests who really pay for their

transportation and there is no occasion to make friendly payments of small sums the occasion for emasculating the statute.

Since the above portion of this opinion was written we have had the benefit of the Supreme Court ruling in the case of *Dorn, Admr:,* v. *Village of North Olmsted,* 133 Ohio St., 375, 14 N. E. (2d), 11. This case has, of course, engaged our earnest attention and after having given it and the cases cited therein our careful consideration, we have arrived at the conclusion that it does not call for a modification of the views above expressed or even the re-writing of the opinion.

The court, of course, has furnished a more authoritative definition of a "guest" than any given by us, as follows:

"Within the meaning of Section 6308-6, General Code, a guest is one who is invited, either directly or by implication, to enjoy the hospitality of the driver of a motor vehicle, who accepts such hospitality and takes a ride either for his own pleasure or on his business without making any return to or conferring any benefit upon the driver of the motor vehicle other than the mere pleasure of his company."

This is the definition given in the case of *Beer* v. *Beer, supra,* in which case it was held that a sister riding with her brother is not a guest where she is riding under an agreement whereby she and her brother are to visit their father in the hospital, she to furnish the gasoline and oil and the brother the automobile.

In the numerous cases cited by the Supreme Court in the *Dorn case, supra,* there is no light thrown upon the crucial question in this case as to whether the plaintiff was a guest "being transported without payment therefor." All the cases relate to the transportation of those who, under the particular circumstances of the several cases, were held *not to be guests,* such

as a boy riding in the conveyance for the purpose of making a delivery; a domestic in the car; a party cranking a car; one riding in a car demonstration; one riding on a truck and helping to unload goods; a mining engineer paid for making reports; one driving a car for the owner; one riding as a prospective purchaser; and persons being transported under similar circumstances.

In the majority of the cases it was held, as a matter of law, that the individual so being transported was not a guest, just as it was held in the *Dorn case* that Wilkinson was not a guest. In some cases it was held that the question was one for the determination of the jury. We must keep clearly in mind the question being determined in the *Dorn case*. It was whether the injured person was a guest. The case did not present the question whether one, who was clearly a guest, was being transported with or without payment therefor.

As we have already stated, the protection of the statute is not given to the owner of the car while transporting one who is not a guest or a guest who is being transported for "payment." We must keep clearly in mind the question before the court in the *Dorn case* and not conclude that the definition given in that case shall be determinative of an entirely different question.

"The syllabus of a decision of the Supreme Court of Ohio definitely states the law of Ohio with reference to the facts upon which it is predicated, and must be read in view of the facts found in such case." *B. & O. Rd. Co.* v. *Baillie*, 112 Ohio St., 567, 148 N. E., 233.

In the instant case there is no doubt that the plaintiff was a guest of the operator of the car. The only question for determination is whether the payment, by her husband to the husband of the operator, of $2 for gasoline constituted payment for the transporta-

tion of the plaintiff. If she was a guest "being transported without payment therefor" the statute limits the liability of the owner. If, however, the payment for the gasoline is to be considered as payment for the transportation then the operator is liable for ordinary negligence.

The court in the *Dorn case*, by using the expression "without making any return to or conferring any benefit upon the driver," did not attempt to thus define the meaning of the word "payment" as used in the statute but merely intended to classify those who never became guests, such as are described in the cases referred to by the court and in the large group of cases cited in *McCann* v. *Hoffman, supra*.

The *Dorn case* quotes the California statute in which a guest is defined as a person who accepts a ride in any vehicle without giving compensation therefor, and also points out that similar statutes, enacted in other states, but not in identical language, have approved the test as to whether the person is transported gratuitously. It is stated: "From the fact that a guest is generally defined as one who is riding gratuitously by invitation or permission, it would seem that the rule set forth by the trial court is sound and reasonable" (referring to 2 Restatement of Law of Torts, Section 490).

In this treatise it is held that the distinction between a passenger and guest is used to denote that the plaintiff is one who is being carried by another for hire.

It will be observed in the case at bar that the invitation was extended and accepted before any money was tendered or accepted as a guest contribution. There was no bargaining between the parties to the end that one sister should obtain the right to be transported by another as a consequence of "such slight

benefits as it is customary to extend as part of the ordinary courtesies of the road."

In the case of *Chaplowe* v. *Powsner, supra,* the Connecticut Guest Statute was under discussion and incidentally the California statutes. The question was whether one who furnished passes to a theater to a group of friends was a guest in the automobile.

While the court held that this was a question for the jury, the court gives this expression:

"We also find force in the defendant's suggestion that to permit emancipation from the consequences of the Guest Statute to rest upon so fragile a foundation as is afforded by the facts found would go far toward defeating the plain purpose of the statute and practically amount to its repeal."

The matter is so well stated in *McCann* v. *Hoffman, supra,* that we refer to it again.

The California statute, and similar statutes of other states, have been interpreted by the courts of many of such states to the effect that contribution of gasoline and like expenses do not remove the case from the effect of such guest statutes.

We cannot conceive that our Supreme Court, in the pronouncement made in the *Dorn case,* had any intention of laying down a rule, through a definition of the word "guest," that would disrupt the friendly relationships and courtesies that have so long existed between those who have enjoyed opportunities to share the pleasures that flow from friendly trips, where a natural exchange of courtesies leads to a balancing of the costs of the trip among those enjoying its pleasures.

Another consequence that would flow from such a rule would be that a driver's obligation to his guests would be constantly changing. For a part of the trip he may be carrying a guest who had contributed to the payment of his gasoline and for such part of the

trip he would not be protected by the statute. He may then take into his car another who is being transported as a guest, without contribution, either in company with the contributing guest or after such a one had left the car and his liability in that event would be different as to each.

Another evil that would flow from such a ruling would be that his insurance coverage would be constantly changing under many insurance policies. Some policies provide that the company does not assume liability where the car is being used for the transportation of passengers for a consideration. Under such a policy, immediately upon the payment of a small sum for gasoline, the owner is no longer protected, either against liability to the contributing guest or as against liability for a negligent act of the driver resulting in damages to one who is not being transported by him. The owner's liability insurance is suspended where the contributing guest is in the car. Such a situation would be intolerable and should not be occasioned by the strained construction that a contribution to the common expense converts a friendly enterprise into a commercial transaction.

The lengthening of this opinion on account of the *Dorn case* is justified only from the fact that our dissenting associate takes the position that the decision in the *Dorn case* is determinative of the question at issue.

Holding as we do that the court erred not only in his general charge on this subject but in overruling the motion for an instructed verdict at the conclusion of the plaintiff's testimony, the judgment is reversed and the court, coming now to render the judgment that should have been rendered by the court below, finds in favor of the defendant.

Taking this view, it is not necessary to pass upon the other errors assigned.

*Judgment accordingly.*

BARNES, P. J., concurs.

HORNBECK, J., dissenting. At the outset we note the quotation from the dissent in *Bertelstein* v. *Marks*, *supra*. The question, "Who is a passenger?" was not in this case. The plaintiff in her petition asserted that she was a passenger. Her original action was against the defendant Marks, against whom she charged negligence. Marks did not answer and plaintiff took a default judgment against him in the sum of $2,500. Marks was insured with the defendant, The Travelers Indemnity Company, against which the plaintiff instituted a supplemental action based upon a policy of insurance held by Marks. The defendant company set up that it was not liable because of a provision in the policy which excluded the use of the automobile by the insured in carrying passengers for a consideration. Thus the plaintiff asserted that she was a passenger. Marks did not deny it. The insurance company admitted it and, because of the admission, asserted that it was not obligated to pay the insured under the policy. The simplest principle of pleading established the status of the plaintiff as a passenger. Any discussion of this question was not germane to any issue raised in the case. It was the claim of the plaintiff that the language of the policy, "carrying passengers for a consideration," did not exclude coverage of the insured by a single instance of the carrying of one passenger only, which fact the evidence disclosed. The quoted part of the dissent from the *Bertelstein case* is however pertinent here.

No good purpose can be served in this case by a discussion of authorities in states other than Ohio. There is no doubt that there is a divergence of opinion

outside of Ohio as to who is a passenger or a guest when riding in an automobile. Fortunately, since the instant case was submitted and as recently as March 23, 1938, the Supreme Court of Ohio in the fourth paragraph of the syllabus of *Dorn, Admr.*, v. *Village of North Olmsted, supra,* has defined the term "guest" under Section 6308-6, General Code:

"Within the meaning of Section 6308-6, General Code, a guest is one who is invited, either directly or by implication, to enjoy the hospitality of the driver of a motor vehicle, who accepts such hospitality and takes a ride either for his own pleasure or on his business without making any return to or conferring any benefit upon the driver of the motor vehicle other than the mere pleasure of his company."

This was the language employed in the charge by the trial court in the *Dorn case* and it was the identical language employed in the general charge by the trial court in the instant case. Judge Myers, who wrote the opinion in the *Dorn case,* expressly approves the charge, and the court, by carrying the definition into the syllabus, likewise approves it. Why should we extend our investigation when our own Supreme Court has promulgated the law which is controlling on us?

The trial judge in the instant case likewise properly charged on the subject of what constituted "a passenger." The plaintiff pleaded that she was a paying passenger of the defendant. The defendant denied this averment and claimed that she was a guest. Under the evidence there is clearly presented a question of fact whether the plaintiff was a passenger. The facts disclose that before the plaintiff and her husband started on the automobile trip there was a definite arrangement whereby the husband of the plaintiff paid to the husband of the defendant a certain sum of money, namely, $2, which agreement was satisfactory to the parties. True, it was stated that it was for gas,

but what difference does this qualification make? Can it be said, then, as a matter of law that the plaintiff was a guest and not a paying passenger under these circumstances? Did she accept the hospitality of the defendant, taking a ride either for her own pleasure or on her own business without making any return to, or conferring any benefit upon, the driver of the motor vehicle, other than the mere pleasure of her company? For what purpose was the $2 paid?

Here the payment was in money. The trip to be taken was from Dayton to Versailles and return. It seems probable that $2 was fair payment for the cost of transporting the plaintiff and her husband on the trip to be taken. How, then, can it be said that the only thing that they contributed to the trip was the mere pleasure of their company?

The charge is criticized as including the elements of joint enterprise. I do not believe it is subject to that criticism and falls far short of setting forth all the elements of joint enterprise. The trial judge, by way of abundant precaution, included the full language of the *Beer case, supra,* wherein it is said: "Having a common object or purpose" with the driver in the place where they were going. This is probably surplusage but certainly did not operate to the prejudice of the defendant.

I find no justification whatever under these facts, in the light of the specific, approved definition of a guest in the *Dorn case,* in holding, as a matter of law, that the plaintiff was a guest. Whether she was a passenger on this record was clearly a question for factual determination by the jury.

There is no prejudicial error in the action of the court in refusing to direct a verdict, nor in the other errors assigned. The case was difficult, but the court tried it carefully and well.

The judgment should be affirmed.