## LOUISE M. KUSER, Appellant, *v.* MARY BARENGO, Respondent.

No. 3701

March 13, 1953.        254 P.2d 447.

*Clel Georgetta* and *William L. Hammersmith,* of Reno, for Appellant.

*Griswold and Vargas,* of Reno, for Respondent.

## OPINION

By the Court, BADT, J.:

This is a suit for personal injuries growing out of an automobile accident. Plaintiff sued on two causes of action, the first by reason of defendant's alleged ordinary (as distinguished from gross) negligence, and the second by reason of defendant's alleged gross negligence. As to the first cause of action the court granted a motion for a directed verdict for the reason that plaintiff was barred from recovery under the terms of the Nevada guest statute. As to the second cause of action the court granted a nonsuit on the ground that plaintiff had not made out a case of gross negligence under the statute.

Of the eight assignments of error, five have largely to do with questions arising from the pleadings. The remaining three we may consider in connection with the following two points with which this opinion is concerned. 1. Did the trial court properly determine as a matter of law under the facts presented that the plaintiff was a guest in the defendant's car and therefore could not recover damages for personal injuries resulting from the ordinary (as distinguished from gross) negligence of the defendant.[1] (This issue was presented

---

[1]The applicable portions of Nevada's "Guest Statute" read as follows:

"§ 4439. OWNERS OR DRIVERS OF VEHICLES ABSOLVED FROM DAMAGES IN EVENT GUESTS ARE INJURED OR

in the plaintiff's first cause of action, as to which cause of action the court directed the jury to return a verdict for defendant.) 2. Did the trial court properly determine as a matter of law that, under the facts presented, the plaintiff had not made out a case of gross negligence on the part of the defendant and that the question of gross negligence should therefore not be submitted to the jury. (This was involved in the plaintiff's second cause of action, as to which cause of action the court in effect made an order of nonsuit.)

1. The plaintiff, Mrs. Kuser, paid the defendant, Mrs. Barengo, a portion of the expense of the gasoline and oil consumed on the trip. The amount has been variously established as more than $5 but less than $10. At one place in the testimony it is fixed at approximately or slightly above $5.22. The court held that this did not constitute "giving compensation" for the "ride" as defined in the foregoing statute so as to remove the plaintiff from the status of a guest as there defined. The facts on this phase of the case were as follows:

Mrs. Kuser, residing in Reno, had been named a delegate to the Republican state convention in Las Vegas and also as a delegate to the Nevada State Federation of Women's Clubs in the same city at about the same time. Mrs. Barengo, also residing in Reno, had been named a

---

KILLED. § 1. Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the State of Nevada, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. * * *

"EXCEPTION IF DRIVER BE GUILTY OF INTOXICATION OR WILLFUL MISCONDUCT. Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately resulting from the intoxication, willful misconduct, or gross negligence of such owner, driver or person responsible for the operation of such vehicle; * * *

"DEFINITION OF 'GUEST.' For the purpose of this section the term 'guest' is hereby defined as being a person who accepts a ride in any vehicle without giving compensation therefor." N.C.L. 1931–1941 Supp.

delegate to this convention of the Nevada State Federation of Women's Clubs. Mrs. Marvin Humphrey told Mrs. Kuser that Mrs. Barengo (whom Mrs. Kuser had never met) intended to drive to Las Vegas and would probably have room in her car. Mrs. Humphrey called Mrs. Barengo and later Mrs. Kuser called Mrs. Barengo on the phone to ask whether Mrs. Kuser could ride with her to Las Vegas. Mrs. Kuser then testifies: "I called Mrs. Barengo and asked if I could ride with her, if she had room in her car, and she said, yes, she did, and I told her I wanted to pay my way to Las Vegas if I rode with her and we arranged when we were to leave, etc. Q. Will you tell us what was said about payment? A. Nothing very much, except I said I wanted to pay and Mrs. Barengo said that was all right and we would talk about it later. Q. Was anything said as to the amount? A. No." Plaintiff's counsel again went into the subject. "Q. What arrangement did you make with Mrs. Barengo? A. There weren't any arrangements made; I just said I wanted to pay. When we got to Las Vegas I asked her if I could pay for that portion of the trip and Mrs. Barengo said we would settle it later, so there was nothing more said." A Mrs. Gillespie accompanied Mrs. Barengo and Mrs. Kuser on the trip. After the accident on the return trip from Las Vegas, which we shall have occasion to describe later, the subject of payment was again brought up while the three women were in the hospital at Tonopah. It is not clear who brought the subject up first, but it appears that Mrs. Gillespie had paid for part of the gasoline and oil through the use of her credit card. It was suggested that the matter should be settled before the parties left the hospital. Mrs. Kuser cashed a $10 check. Mrs. Barengo testified that the amount paid her by Mrs. Kuser was $2.22 and the amount paid Mrs. Gillespie by Mrs. Kuser was something over $3. As to the original telephone call, Mrs. Barengo testified: "At that time [Mrs. Kuser] also said of course she would like to pay

expenses of the trip, and I said we would talk about that later when we got together." Mrs. Kuser signed a statement in the hospital reading in part: "The three of us had agreed prior to the trip to pay all car and travelling expenses." On cross examination, with regard to this statement, she testified: "There was never any mention of the three of us dividing before we went on the trip. I didn't know what I was to pay and that is why when we got to Las Vegas I wanted to know because I wanted to know how to budget myself. I wanted to try to find out how much it would come to. She told me we would settle it later and then we were to divide it three ways. There was no mention before."

The foregoing comprises all of the material evidence in the case that has to do with this phase of the subject. The case is the first[2] in which we have been called upon to determine whether or not the sharing by the plaintiff of the cost of gasoline and oil expense, under the circumstances recited, is sufficient to remove the case from the effect of the operation of our guest statute. The question has been considered by the courts of last resort of many of our sister states. Appellant has cited and quoted from many cases which have held, under the facts of those cases, that payment of a part of the gasoline and oil expense removed the case from the effect of the guest statute. Respondent has cited many cases in which such payment was held not to remove the plaintiff from the operation of the statute. The courts have indulged in much refinement of reasoning and pointing out of differences and distinctions in an attempt to reconcile the various holdings. Many different and varying elements have been considered by the courts in governing the conclusions reached and the distinguishing of prior decisions. Naturally we do not find the

[2]Although Nyberg v. Kirby, 65 Nev. 42, 188 P.2d 1006, 193 P.2d 850, concerned our guest statute, the facts of that case were such that it affords us no assistance here.

facts precisely the same in any two cases, and it may safely be said that each case must be determined upon its own facts. Miller v. Miller, 395 Ill. 273, 69 N.E.2d 878, 60 C.J.S. 1010, Motor Vehicles, sec. 399 (5) a, n. 71. We have carefully considered all of the cases submitted by appellant, but are of the opinion that the case falls rather within the category of McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909, 910, in which two married couples were the parties involved, and in which the court found that "it was apparently the tacit and mutual understanding that such expenses [transportation, hotel and meals] would be shared equally." Mr. Justice Shenk, speaking for the Supreme Court of California, with all of the justices concurring, said:

"The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtained under any construction of the statute its purposes would be defeated and its effect annulled. The relationships which will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited. Chaplowe v. Powsner, 119 Conn. 188, 175 A. 470, 472, 95 A.L.R. 1177. There a distinction was made where the facts showed a case merely of reciprocal hospitality. It was stated: 'Although the operation of the statute in denying a right of recovery should not be extended, by construction, beyond the correction of the evils and the attainment of the social objects sought by it * * * equally, the scope of the term "guest" should not be so restricted as to defeat or impair those purposes, as would be the case if one riding as a mere recipient of hospitality be excluded from the status of a guest.' The

principle announced in that case has been applied where the recipient of the transportation furnished gasoline and oil on the journey; and where there was no relationship of mutual benefit between the parties other than of a social nature, the rider has been held to be a guest and not a passenger. The mere fact that the parties in making the pleasure trip together have a like purpose in mind does not constitute it a joint venture wherein compensation is deemed to have been given. 'A host and guest may, and often do, have a common objective, in point of time or place; yet their relationship as such is not thereby necessarily changed. There may still be lacking a community of interest or an engagement to effect a common purpose as that term is understood in the law of joint adventure.' Eubanks v. Kielsmeier, 171 Wash. 484, 18 P.2d 48, 49. The community of interest is lacking even though the plaintiff paid for some of the gasoline. See also, Clendenning v. Simerman, 220 Iowa, 739, 263 N.W. 248; Morgan v. Tourangeau, 259 Mich. 598, 244 N.W. 173. The case of Olefsky v. Ludwig, 242 App.Div. 637, 272 N.Y.S. 158, in construing the Connecticut statute, held that as a matter of law contribution to the expenses of gasoline, oil, and garage does not constitute 'payment' within the meaning of that statute, relying on Master v. Horowitz, 237 App.Div. 237, 261 N.Y.S. 722, 723, affirmed 262 N.Y. 609, 188 N.E. 86, which is to the same effect. See, also, Askowith v. Massell, 260 Mass. 202, 156 N.E. 875.

"* * * The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure. The same conclusion was announced in Rogers v. Vreeland, 16 Cal.App. (2d) 364, 60 P.2d 585, under similar facts, and we perceive no necessity for adopting a different rule in construing the language employed by the Legislature."

This case has been cited with approval and followed by the courts of many other states and is considered a leading case. Albert McGann Securities Co. v. Coen, 114 Ind.App. 60, 48 N.E.2d 58, 1000; Voelkl v. Latin, 58 Ohio App. 245, 16 N.E.2d 519; Duncan v. Hutchinson, 139 Ohio St. 185, 39 N.E.2d 140; McCornack v. Pickerell, 225 Iowa 1076, 283 N.W. 899.

We conclude that the learned trial judge properly held as a matter of law that plaintiff's payment of part of the gasoline and oil expense of the trip in question did not of itself change her status from that of a guest, and accordingly properly directed a verdict for defendant on plaintiff's first cause of action. The judgment for defendant on plaintiff's first cause of action must therefore be affirmed.

2. We have next to consider whether it was error for the trial court to determine as a matter of law that the plaintiff had not made out a case of gross negligence sufficient to go to the jury, or, more specifically, whether the granting of a nonsuit on the second cause of action was error. The facts involved in this phase of the case are as follows:

On the return trip northbound from Las Vegas to Reno the car—Mrs. Barengo driving and Mrs. Kuser and Mrs. Gillespie riding with her—arrived at a point some 18 miles north of Beatty at about one o'clock in the afternoon. Mrs. Barengo had been driving at speeds varying from 70 to 90 miles per hour, and Mrs. Gillespie had at one point asked her to slow down. She slackened her speed for a short distance to 70 miles an hour and then resumed a greater speed. At a point about 15 miles north of Beatty a Nevada state highway department truck headed north on the highway contained a large sign reading, "PAINTING CENTER-LINE. KEEP RIGHT," with a large arrow pointing to the right. A highway employee on the road was waving a flag and pointed to the sign. Mrs. Barengo "slowed down for

him," proceeded about two miles at reduced speed and again increased her speed. In the distance, from 3,000 feet to a mile ahead, an object was seen in the center of the highway, which no one could at first identify. As the Barengo car approached closer, it was identified as a large red truck straddling the center line of the highway. It was propelling a striping machine and was proceeding slowly northward along the center of the highway. It had a large sign on back reading "PASS," with a large arrow pointing to the right. It extended so far over into the right-hand lane that in order to pass it on the right it would be necessary for the right-hand wheels of the passing car to be on the unpaved, soft shoulder of the road. The road was a 20-foot, two-lane, center-striped, surfaced highway. The truck, eight feet wide, occupied four feet of each 10-foot lane, leaving a six-foot over-all paved passageway on each side. Some distance (one witness estimated this at about 1,000 feet) back there was a warning sign reading "SOFT SHOULDERS NEXT 4 MILES," but it does not appear that Mrs. Barengo saw or read this sign. The weather was clear, the visibility unimpaired and no other vehicles were in the immediate vicinity. Mrs. Barengo, approaching the truck and striper at a speed of 70 miles an hour, attempted without slackening speed to pass on the right. When her right wheels struck the soft shoulder, the car proceeded along the shoulder some 267 feet, swerved to the left and upon the paved surface, careening over almost to the left shoulder, swerved back to the right, nosed into the borrow pit, shot through the air for a distance of 42 feet, turning over in the air and alighting upon its top in the sagebrush 75 feet from the right or easterly side of the highway. There were skid marks on the highway for 156 feet after the car passed the highway truck and striper.

Appellant asserts and respondent concedes the general rule that if the facts are admitted and reasonable men would draw the same inferences from those facts, gen-

erally the question for decision becomes one of law for the court to decide, but that where the facts are in dispute, or where reasonable men would draw different inferences from admitted facts, the question is one of fact for the jury and not one of law for the court. Herzog v. Mittleman, 155 Ore. 624, 65 P.2d 384, 109 A.L.R. 662; Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65. Respondent refers us to numerous cases in which the trial court was held to be without error in holding that as a matter of law gross negligence had not been proved and that a nonsuit should be granted. In particular she relies upon Hart v. Kline, 61 Nev. 96, 116 P.2d 672. The majority of this court there held that under the "physical facts" there appearing, and which facts refuted the testimony of the plaintiff, no gross negligence of the defendant could be concluded from his actions within the split seconds of time involved. The situation is quite different in the present case. The truck obstructing the highway was visible so far ahead that its nature could not even be determined. As Mrs. Barengo drove toward it the entire situation was evident, and we are clearly of the opinion that reasonable men might conclude that the attempt to pass it at 70 miles an hour under the conditions described[3] was gross negligence. Although the learned trial judge quite properly adopted the definition of gross negligence as given by this court in Hart v. Kline, 61 Nev. 96, 116 P.2d 672, that definition does not exclude the proposition that reasonable men might conclude that speed, in and of itself, may under the particular circumstances of the case, constitute such failure

---

[3]The ruling on the nonsuit was not made until after the defendant, as well as the plaintiff, had closed her case. Despite the fact that on motion for nonsuit the evidence is considered most favorably for the plaintiff and interpreted most strongly against defendant, Cann v. Williams Land & Livestock Co., 56 Nev. 242, 48 P.2d 887, respondent refers us to testimony in conflict with that of the plaintiff—that defendant came upon the highway truck and striper suddenly upon rounding a curve, that defendant was driving only from 60 to 65 miles an hour, that plaintiff grabbed the wheel when defendant drove her car out upon the shoulder. If these conflicts could be considered it would be the more reason that the conflict should be resolved by the jury.

to exercise even a slight degree of care, such aggravated character of the act or omission, such absence of even slight diligence, or want of even scant care, such indifference to present legal duty, such utter forgetfullness of legal obligations so far as other persons may be affected, such heedless and palpable violation of legal duty respecting the rights of others, as to constitute gross negligence. Clark v. Hicks (Colo.), 252 P.2d 1067; Connors v. Boland, 282 Mass. 518, 185 N.E. 38. This being so, it was error to take the case from the jury by granting a nonsuit, and for this reason a new trial must be granted.

While we have not discussed the status of the pleadings or the manner in which gross negligence was pleaded in plaintiff's second cause of action, whether directly or by reference to the first cause of action, it appears not unlikely that amendment of the pleadings may be in order.

The judgment of nonsuit on appellant's second cause of action and the order denying appellant's motion for new trial as to her second cause of action are hereby reversed and the case remanded for a new trial of said second cause of action, with directions to permit such amendments to the pleadings and under such terms and conditions as to the trial court may seem proper. Appellant will recover her costs in this court.

EATHER, C. J., and MERRILL, J., concur.