PHYLLIS NICHTER, APPELLANT, *v.* J. MALCOLM EDMISTON, RESPONDENT.

No. 4903

November 18, 1965                                       407 P.2d 721

*Nada Novakovich,* of Reno, for Appellant.

*Richard P. Wait* and *Roger L. Erickson,* of Reno, for Respondent.

**O P I N I O N**

By the Court, ZENOFF, D. J.:

This is an appeal from a jury verdict and judgment for defendant surgeon in a medical malpractice action.

Appellant, Phyllis Nichter, underwent surgery for a breast biopsy at St. Mary's Hospital in Reno. While still anesthetized, she next was prepared for removal of a small lesion from her left arm, a nurse applying tincture of zephiran disinfectant to the area while defendant surgeon, Dr. J. Malcolm Edmiston, his back turned, was rescrubbing at a nearby sink. Dr. Edmiston then returned to the operating table and applied an electric needle to remove the lesion. For some reason fumes from the disinfectant ignited on contact with the heated needle, causing a second degree burn over a four-inch area of Mrs. Nichter's arm, and leaving a permanent scar. Subsequently, Mrs. Nichter brought this action against Dr. Edmiston. A jury found for defendant.

Appellant assigns six contentions of error. We feel only two merit extensive discussion, but note at the outset that we reject all six.

1. The Washoe County Bar Association and Washoe County Medical Society, pursuant to a "Joint Medical-Legal Plan," have created a "Joint Screening Panel" to provide pre-litigation examination of alleged medical malpractices in an attempt to ward off unfounded law suits and, concurrently, assist orderly recovery for bona fide claims. Appellant and her counsel requested an appearance before this panel. So doing, they signed a form agreement "that the deliberations and discussions of the Joint Screening Panel and of any *member* of the Joint Screening Panel in its deliberation of the case will be confidential within the Joint Screening Panel and privileged as to any other person, and that no Joint Screening Panel *member* will be asked in any action to testify concerning the deliberation, discussion and internal proceedings of the Joint Screening Panel." (Emphasis added.)

At trial, however, appellant sought to impeach Dr. Edmiston by use of a statement he allegedly made before the panel.[1] The court refused this offer of proof

---

[1]Proceedings before the panel, by express design, are informal and not reported. Appellant's counsel, however, insisted on taking notes and later claimed Dr. Edmiston had told the panel that the burn was caused by an excessive application of tincture of zephiran. At the trial, Dr. Edmiston testified he "did not know" what caused

on grounds that all matter before the panel was privileged by virtue of the aforementioned agreement. Appellant here concedes existence of the agreement, but insists it pertains only to "members" of the panel, thus excluding Dr. Edmiston.

We must agree, though we sympathize with respondent's contention that so limiting the panel's privilege defeats the agreement's entire purpose, which is to encourage full and candid discussion before the panel without fear of subsequent litigable consequences. Nevertheless, the agreement repeatedly refers only to *members of the panel.* In the face of such wording, considering the agreement could as easily have provided exclusion to "members of the panel *and all persons* appearing before it," we feel powerless here to view the privilege as extending to nonmembers. Thus Dr. Edmiston's comments before the panel were admissible at the trial for impeachment purposes. However, under the instant facts refusal of these comments was harmless error, since plaintiff introduced almost identical impeachment from two other sources. Both she and her mother testified Dr. Edmiston had admitted to them the burn was "an accident" probably caused by an excessive application of zephiran and he "was sorry." The jury thus had ample opportunity to consider Dr. Edmiston's contrary testimony in its least favorable light. "This witness had been discredited, therefore, as much as was possible; delivery up of the statement would have added no new factor." Clark, J., dissenting in United States v. Krulewitch, 145 F.2d 76 (2d Cir. 1944).

2. Having found no privilege, it is unnecessary for us to consider appellant's contention that even had a privilege existed, it was waived by respondent's prior reference simply to the existence of a panel meeting.

---

the burn. During appellant's offer of proof, Dr. Edmiston, while still maintaining comments before the panel were privileged, protested he only had said "one of the causes" of the burn might have been an excessive application of zephiran.

Suffice that where a privilege does exist, it cannot so lightly be discarded. United States v. Krulewitch, supra.

3. Appellant also protests the trial court's refusal of the following requested instruction, which, in effect, could have held Dr. Edmiston liable for the acts of everyone in the operating room:

"A doctor in charge of a surgical operation is liable for the negligence of those who become his temporary servants in assisting in the operation, including physicians and nurses employed by the hospital in which the operation has been performed, or engaged by the patient."

The difficulty is that, under evidence presented, this instruction offered but one extreme of the law. For the instruction to have any pertinence, the jury would have had to assume, as a matter of law, that the nurse applying the tincture of zephiran was a "temporary servant" of Dr. Edmiston. However, law on the subject is not that clear. True, it often is said that nurses "become the temporary servants or agents of the surgeon-in-charge while the operation is in progress," Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258, but this is qualified by an extensive analysis in Sherman v. Hartman, 137 Cal.App.2d 589, 290 P.2d 894. Thus, the court, distinguishing Ybarra, held the "true rule" was to be found in Hallinan v. Prindle, 17 Cal. App.2d 656, 661–662, 62 P.2d 1075, to wit: absent knowledge, special connection, or lack of ordinary care, a surgeon is not liable for the negligence of hospital or other nurses, attendants or interns who are not the surgeon's employees. The exception to this rule is "where a hospital nurse, although not in the regular employ of an operating surgeon, is under his *special supervision and control* during the operation." (Emphasis added.)

To find such "special supervision and control" courts generally look to custom and usage. Salgo v. Leland Stanford, 154 Cal.App.2d 560, 317 P.2d 170. Is the act sought to be attributed to the surgeon via vicarious liability one for which the surgeon reasonably can be held responsible? Seneris v. Haas, 45 Cal.2d 811, 291 P.2d 915, 53 A.L.R.2d 124. Thus, purely routine acts of the

hospital staff generally are held separate. In this category is the routine preparation of a patient preceding an operation.

In the instant case, the nurse's application of disinfectant to Mrs. Nichter's arm about to undergo cauterization does not seem that distinct from general pre-operative procedure. We cannot say as a matter of law that this was the type of act requiring "special supervision and control" by the surgeon in charge. No harshness results from this. Plaintiff could have joined the hospital and nurse as co-defendants.

Having decided plaintiff's requested instruction to be incorrect because it would have imputed liability as a matter of law, we now turn to the more difficult question of whether the absence of any instruction precluded imputation. The trial court must instruct on the "general principles of law governing the case," even though not requested to do so. People v. Wade, 53 Cal.2d 322, 1 Cal.Rptr. 683, 348 P.2d 116. The rule seems equally vital for civil litigation. However, in the instant case we can find no attempt by plaintiff to offer evidence that custom and usage did require Dr. Edmiston to "supervise" the application of the zephiran. Therefore, absence of an instruction under these circumstances was not prejudicial error.

4. The trial court properly denied appellant's motion for a directed verdict. Bliss v. DePrang, 81 Nev. 599, 407 P.2d 726.

5. Similarly, there was no error in the court's refusal to instruct the jury that it could "judicially notice" that when heat is applied to alcohol it is combustible. We need not decide whether the subject is one of which judicial notice may be taken. It is sufficient to state simply that the instruction was not essential and error is seldom found in the failure to give an unnecessary instruction, though it may be a permissible one.

6.  Finally, appellant has no basis for attacking some of respondent's given instructions as argumentative. Affirmed.

THOMPSON and BADT, JJ., concur.