JULIE JOHNS, APPELLANT, v. DAVID CROCKETT McATEER, EARL V. BROWN AND CADY AUTO CO., RESPONDENTS.

No. 5701

July 22, 1969                                  457 P.2d 212

*Howard F. McKissick, Jr.* and *Richard P. Wait,* of Reno, for Appellant.

*Goldwater, Taber, Hill & Mortimer,* and *Echeverria and Osborne,* of Reno, for Respondents.

## OPINION

By the Court, COLLINS, C. J.:

This is an appeal from a jury verdict and judgment in favor of respondents and from an order denying appellant's motion for a new trial. The error asserted is the giving or failure to give certain instructions to the jury. We affirm the judgment and order.

Appellant (plaintiff below) brought an action for personal injuries resulting from a collision between the car in which she was riding as a guest, driven by respondent McAteer, and a

sheep truck driven by respondent Brown and owned by respondent Cady Auto Co. (defendants below).

On the evening of February 4, 1963, respondent McAteer and appellant Julie Johns left Lake Tahoe in his 1959 Chevrolet El Camino to go to Sparks, Nevada, to see a floor show. The weather was clear and the highway was dry when they left. They proceeded to Sparks via Carson City, saw the midnight show at the Sparks Nugget, stopped for a late dinner at the Mapes in Reno after the show, and about 2:30 to 3:00 a.m. commenced their drive back to Lake Tahoe. Appellant went to sleep shortly after they left Reno. Between Reno and Carson City a piece of tread came off one of McAteer's tires and he stopped in Carson City to have the tire changed.

McAteer testified that as he proceeded up Highway 50 to Spooner Summit the weather was clear and the highway was dry. He observed no ice on the highway. He reached the summit and proceeded down the west side at about 50 miles per hour. There were no signs warning of icy conditions. The highway was four lanes to the intersection of Highway 50 and 28 but reduced to two lanes from that point to the scene of the accident.

As McAteer continued downhill at a speed of approximately 50 miles per hour, he observed two white lights which appeared to be headlights about one-quarter mile ahead of him. He took his foot off the accelerator but did not apply his brakes. He next saw someone running up the embankment waving a flashlight, and he immediately applied his brakes. The application of his brakes caused him to go into a skid and he slid into a truck and trailer stopped on the highway blocking the westbound lane of traffic. He testified this was the first indication he had that there was ice on the road.

Respondent Earl Brown was the driver of the truck, owned by respondent Cady Auto Co., which was stopped on the highway. He and another driver were transporting a load of sheep to California. The truck was a 1959 International, tandem axle truck, with a gross weight of 80,000 pounds. The driving wheels of the truck were equipped with snow tires; the trailer wheels were not. Mr. Brown started driving at Fernley, Nevada, shortly after midnight. He testified it was raining at the foot of Spooner Summit, where he stopped to check his tires. There was a misty rain all the way up but visibility was good as far as the illumination of the truck lights. When he reached the top of the summit it began to clear but the pavement was still wet. He testified he was not aware of any ice on the highway.

He proceeded down the west side of the summit in second gear with five to seven pounds of air drag on the brakes at a speed of five to ten miles per hour. At about one-quarter to one-half mile before the accident he felt that "something was a little bit wrong" but he "couldn't place it." He woke his partner up, who came up front, but they could not ascertain that anything was wrong and continued down the hill. The truck suddenly began to slide. He prevented the truck from going over a steep embankment, but it did "jackknife" when it came to a stop, blocking the westbound lane and protruding about one foot across the center line.

Officer David McCreary of the Douglas County Sheriff's office was patrolling the highway from Glenbrook to the intersection of Highway 50 and 28 on the evening in question. He testified that it had been raining on the evening of the accident but it started to clear, and about 2:30 the temperature dropped, causing the water on the highway to freeze into a solid sheet of ice. He observed Brown's truck driving down the highway at about five to ten miles per hour and saw it go into a slide. The truck slid about 300 feet and stopped, blocking the westbound lane. Within two minutes of this incident, he saw McAteer's automobile coming down the highway at about 45 to 50 miles per hour. He told the truck drivers to get out of the way and he waved his traffic baton two or three times and then removed himself from the path of the vehicle. McAteer's vehicle slid for about 225 feet, but this did not reduce his speed. The officer stayed at the scene of the accident, directing traffic around the accident, until the highway could be cleared.

A complaint was filed on May 7, 1963, alleging negligence on the part of Brown and gross negligence on the part of McAteer. The case was tried before a jury on November 27, 1967. The jury found in favor of defendants and against plaintiff.

Plaintiff's motion for new trial was denied. Plaintiff appeals from the judgment and the order denying the motion for new trial.

The issues presented for our consideration are these:

I.   Did the district court err in refusing to give plaintiff's offered instructions B or C?

II.   Was the giving of instruction No. 16 prejudicially erroneous so as to constitute grounds for reversal?

III.   Was the giving of instruction No. 15 prejudicially erroneous so as to constitute grounds for reversal?

1.   Appellant requested, and the trial court refused to give, instruction B, which reads as follows: "Speed, in and of itself,

may, under the particular circumstances of the case, constitute such failure to exercise even a slight degree of care, such aggravated character of act or omission, such absence of even slight diligence, or want of even scant care, such indifference to present legal duty, such utter forgetfulness of legal obligations so far as other persons may be affected, such heedless and palpable violation of legal duty respecting the rights of others, as to constitute gross negligence," or in the alternative, instruction C, which reads as follows: "Speed, in and of itself, may, under the particular circumstances of a case, constitute gross negligence under the law of the State of Nevada."

Appellant asserts it was prejudicial error for the court to refuse to give one or the other of those two instructions, and relies upon Kuser v. Barengo, 70 Nev. 66, 254 P.2d 447 (1953).

The court did give the general definition of gross negligence, set forth in Nevada Pattern Civil Jury Instructions, No. 7.4, and taken directly from Hart v. Kline, 61 Nev. 96, 116 P.2d 672 (1941), which was subsequently approved in Kuser v. Barengo, supra, and Troop v. Young, 75 Nev. 434, 345 P.2d 226 (1959). That instruction reads as follows: "Gross negligence is substantially and appreciably higher in magnitude and more culpable than ordinary negligence. Gross negligence is equivalent to the failure to exercise even a slight degree of care. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character, as distinguished from a mere failure to exercise ordinary care. It is very great negligency [sic], or absence of slight diligence, or the want of even scant care."

The court also gave an instruction relating to the operation of vehicles upon the highways in this state. That instruction reads as follows: "It shall be unlawful for any person to drive or operate a vehicle of any kind or character: (a) in a reckless manner on any street or highway in this state; or (b) in any other than a careful or prudent manner; or (c) at a rate of speed greater than is reasonable and proper, having due regard for the traffic, surface and width of the highway; or (d) at such a rate of speed as to endanger the life, limb or property of any person. . . ."

Appellant argues that because her proposed instructions B and C are correct statements of law upon the authority of Kuser v. Barengo, supra; that because evidence was admitted of respondent McAteer's speed under dangerous circumstances; and because reasonable men might conclude that speed, in and

of itself, may under those particular circumstances constitute gross negligence, it was prejudicial and reversible error not to give one or the other. We disagree.

An important purpose of instructions on law is to enable counsel to argue his theory of the case to the jury which may be warranted, deduced or inferred from the pleadings and facts admitted in evidence. Ample latitude was given to appellant's counsel for argument to the jury that speed of the McAteer vehicle, in combination with the other factors of icy highway and lack of snow tires or chains could constitute gross negligence under instructions 4 and 14, given by the court and quoted above. The record shows that appellant's counsel argued that very analysis and conclusion to the jury.

There is no requirement that all offered instructions that correctly state the law must be given. In Duran v. Mueller, 79 Nev. 453, 386 P.2d 733 (1963), this court held that: "As a general proposition the number of instructions to be given is discretionary with the court. If one instruction adequately covers a given theory of liability or defense, *it is preferable that the court refuse additional instructions relating to the same theory,* though couched in different language. Here the issues to be tried were defendant's negligence, the plaintiff's contributory negligence, causation, and, of course, damages if liability was found to exist. The jury was properly instructed on those issues. The two instructions just mentioned *were merely embellishments which the court could properly refuse.*" (Emphasis added.)

2. Appellant objected to the giving of instruction 16, which reads as follows: "The safety requirements of the State of Nevada require all motor vehicles to be equipped with chains or snow tires when operated upon a highway where snowy or icy conditions exist when the highway is marked or signed for the requirement of chains or snow tires." That instruction paraphrases NRS 484.470, which reads: "TIRE CHAINS; SNOW TIRES. It shall be unlawful for any person to operate a motor vehicle, whether the same be an emergency vehicle or otherwise, without tire chains or snow tires upon any street or highway, under icy or snowy conditions, when the highway is marked or signed for the requirement of chains or snow tires."

There was no evidence or contention by respondents that the highway in the vicinity of the accident was marked or signed for the requirement of chains or snow tires. Although it was a correct statement of law, it was error to give it when not based

upon evidence. Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65 (1915).

The law is clear that all motorists are under a twofold duty in operating motor vehicles: (1) to comply with applicable traffic regulations, and (2) exercise the care of the ordinarily prudent person under the circumstances. Applicable statutes and ordinances prescribe only minimum prudent conduct, and compliance therewith does not abrogate a person's common-law duty to exercise ordinary care. Lusk v. Smith, 137 S.E.2d 734 (Ga.App. 1964); Peterson v. Salt River Project Agr. Imp. & Pwr. Dist., 391 P.2d 567 (Ariz. 1964); Johnson v. Baker, 120 N.W.2d 502 (Iowa 1963); Gooch v. Avsco Inc., 337 S.W.2d 245 (Mo. 1960); O'Donley v. Shelby, 262 S.W.2d 362 (Ky.App. 1953); Langner v. Caviness, 28 N.W.2d 421 (Iowa 1947).

The jury here was instructed about the statute requiring snow tires or chains where posted. But that statute was not applicable. The jury was not instructed, however, about a common-law duty of care which may have required snow tires or chains regardless of any statute, because appellant did not request or propose such an instruction. There appears to have been ample evidence before the court to have warranted the giving of such a properly drawn instruction. We will not consider as error the failure to give such a specific instruction when not requested of the trial court. NRCP 51. But see Nichter v. Edmiston, 81 Nev. 606, 407 P.2d 721 (1965). We therefore limit our discussion to the prejudicial effect of erroneously given instruction 16. In a careful examination of the arguments of counsel to the jury regarding instruction 16, we cannot say prejudice resulted. The instruction was mentioned casually by McAteer's counsel and more pointedly by counsel for Brown and Cady Auto Co. But we are satisfied the jury reached its verdict by resolving the substantially conflicting evidence relating to the alleged gross negligence of McAteer and the ordinary negligence of Brown and Cady relating to their awareness of the presence of "black ice."

3. Instruction No. 15 reads as follows: "You are instructed that Section 484.231, Nevada Revised Statutes, provides as follows:
"1. Upon any highway outside of a business or residence

district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of the highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of 200 feet in each direction upon such highway.

"2. This section shall not apply to the driver of any vehicle which is disabled while on the paved or main-traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

Appellant objected to the giving of this instruction on the ground that it is not prefaced or qualified by a clear statement that the disablement of the truck on the highway must not have been the result of respondent Brown's prior negligence, and cites Alires v. Southern Pacific Co., 378 P.2d 913 (Ariz. 1963). Appellant argues there was evidence admitted of Brown's negligence prior to the disablement in that he knew it had been raining and because of the mountainous terrain, time of year and general weather conditions should have anticipated the presence of ice in the exercise of ordinary care and that he had ample opportunity to pull off the road and stop or install chains.

Respondent, on the other hand, argues that Brown had done everything a reasonably prudent person would have done under the same or similar circumstances. He stopped and checked his tires, kept a careful lookout, had snow tires on his driving wheels, reduced speed down the grade to 5–10 miles per hour, affixed 5 to 7 pounds air pressure on his brakes, awakened his fellow driver when he felt "something was a little bit wrong but couldn't place it," and otherwise proceeded cautiously down the highway.

It appears to us that the instruction was properly given in line with the theory of respondent Brown's case. His contention is that his disablement was not the result of any prior negligence on his part, and when he skidded on the black ice the truck and trailer jackknifed on the highway, making it impossible for him to avoid stopping and temporarily leaving the disabled vehicle in that position.

On the other hand, appellant was clearly free to argue to the jury that instruction 15 did not apply because under the court's instruction No. 5 on ordinary negligence, Brown was negligent

in failing to apply chains, thereby skidding on the ice, resulting in the disablement of the truck which blocked the highway. For a discussion of this point, see Fleming v. Flick, 35 P.2d 210 (Cal.App. 1934).

The judgment and order are affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.